## *Ex parte* BUTT.

### Opinion delivered March 31, 1906.

1. CONTEMPT—REVIEW.—The rule that proceedings for contempt of court are reviewable on certiorari, and not upon appeal or writ of error, has not been changed by the act of May 6, 1899, which does not extend the right of appeal, but regulates the manner in which it shall be granted and gives the right to bail during pendency of the appeal. (Page 265.)

2. SAME—REFUSAL OF WITNESS TO ANSWER IRRELEVANT QUESTIONS.—If a court or officer examining a witness has jurisdiction of the subject-matter involved, a witness should not be permitted to refuse to answer a question on the ground that it is irrelevant, and the fact that the questions asked a witness are irrelevant or improper furnishes no. reason for impeaching the commitment of the witness for refusing to answer them.   (Page 266.)

3. CONSTITUTIONAL LAW—SELF-INCRIMINATION.—Kirby's Digest, § 3087, providing that "in all cases where two or more persons are jointly or otherwise concerned in the commission of any crime or misdemeanor, either of such persons may be sworn as a witness in relation to such crime or misdemeanor, but the testimony given by such witness shall in no instance be used against him in any criminal prosecution for the same offense," is a valid statute.   (Page 266.)

4. WITNESS—PROTECTION AGAINST SELF-INCRIMINATION.—It is only to the extent that protection is offered by the statute (Kirby's Digest, § 3087) that one jointly concerned with another in the commission of an offense is not privileged to refuse to testify as to facts criminating himself; and as he is not protected against the use of his testimony in other prosecutions, he can not be compelled to testify as to them. (Page 267.)

5. SAME—PRIVILEGE OF SILENCE.—To entitle a party called as a witness to the privilege of silence, the court must see, from the circumstances of the case and the nature of the evidence, that there is reasonable ground to apprehend danger of self-incrimination; but when such ground appears, as the witness alone knows what answers he will. give, he alone can decide whether it will criminate him.   (Page 267.)

6. EXAMINATION BEFORE GRAND JURY—QUESTIONS WHICH MAY BE ASKED.— In an examination before the grand jury of charges of bribery against members of the Legislature and others, a witness may be asked questions which tended to show that he kept a key to a room which was used during the sitting of the Legislature as a meeting place for persons offering and receiving bribes.   (Page 269.)

7. SAME—WITNESS—SELF-INCRIMINATION.—A witness before the grand jury can not be compelled to testify whether, while a member of the Legislature, he accepted and used a free pass over the line of a railroad company.   (Page 269.)

8. SAME—FORM OF QUESTIONS.—Where a witness was asked before the grand jury whether he wrote certain letters, and declined to answer upon the ground that his answers would incriminate himself, it was error for the circuit court to compel him to answer such questions if the letters were not submitted to the court, nor their contents otherwise made known to it.   (Page 270.)

9. SAME—PROTECTION OF WITNESS.—A witness before the grand jury may be compelled to answer whether he wrote to an official of a street railway company during the last Legislature and stated that it would be necessary for the company to put up $1,000 or some amount to defeat a certain bill which affected street railways.   (Page 270.)

10. SAME—WHEN WITNESS REQUIRED TO ANSWER.—A witness before the grand jury may be compelled to testify as to whether railway mileage or mileage books were delivered to him while a member of the Legislature, since if the mileage was delivered to him for a lawful purpose his answer would not incriminate him, and if it was delivered for an unlawful purpose his answer would tend to criminate another, and he could be required to testify, under Kirby's Digest, § 3087. (Page 271.)

Certiorari to Pulaski Circuit Court; *Robert J. Lea,* Judge; affirmed with modification.

*Murphy, Coleman & Lewis,* for petitioner.

If the questions which petitioner declined to answer were illegal and improper, whether from impertinence, immateriality or other cause, the court exceeded its authority in adjudging him guilty of contempt for refusing to answer them.   Kirby's Digest, § 720, subdiv. 5; 9 Cyc. 18; 71 Cal. 238; 131 Cal. 280; 38 Kan. 408; 28 Am. St. 451 and note; 3 Blatchf. 113; *Ib.,* 148; 34 Tex. 666; 46 Neb. 402.   Our constitutional provision securing witnesses against self-accusation is identical with the Federal Constitution on the same subject.   If the lower court's decision violated one of these provisions, it violated both.   35 U. S. (Law Ed.), 1110; L. Ed. 860; *Id.* 1122.

*Robert L. Rogers, Attorney General,* and *Lewis Rhoton,* for respondent.

Conviction for contempt is a conviction in a criminal case. 194 U. S. 326.   Hence, under the provisions of the Acts of 1899, p. 292, petitioner has the right of appeal, and certiorari does not lie.   37 Ark. 318; 52 Ark. 213; 40 Pac. 66; 34 Ark. 847; 42 Pac. 480; 9 Cyc. 64; 199 U. S. 73.

The statute, Kirby's Digest, § 3087, has been upheld by the

decisions of this court. 13 Ark. 307; 67 Ark. 163. It is not for the witness to determine the materiality of the questions. 43 Minn. 253; 1 Best & S., 311; 24 N. Y. 74; 107 N. Y. 427; 106 Mo. 602; 104 Cal. 529; 135 N. C. 118; 83 N. C. 132; 3 Wigmore on Ev., 3181 *et seq.*

BATTLE, J. In March, 1906, F. O. Butt appeared before the grand jury of Pulaski County in obedience to a summons to testify. Among many questions propounded to him by that body he refused to answer the following:

"1. Do you know where room 215 in the Fulk Building in the city of Little Rock is?

"2. Did you not, during the last session of the last Legislature, have a key similar to the one which I now show you, for the purpose of getting in and out of room 215, Fulk Building?

"16. Did you not use free transportation during the last term of the Legislature?

"17. Have you during your term as senator accepted or used, or both accepted and used, free transportation from the St. Louis, Iron Mountain & Southern Railway Company, or what is commonly known as the Frisco Railway, or the Choctaw, Ok. & Gulf Ry. Co., or the Rock Island Ry. Co.?

"20. Please examine the letter dated May 9, 1903, which is addressed to T. L. Cox and signed F. O. Butt, and state whether you wrote the letter.

"21. Please examine the letter written June 9, 1903, addressed to Thomas L. Cox and signed F. O. B., and state whether you wrote that letter.

"22. Please examine the letter of October 7, 1904, and signed Butt, and state whether you wrote that letter.

"23. Please examine the letter dated May 25, 1903, and the slip which is pinned to it, dated August 6, and state whether or not the letter dated May 25, 1903, is not the reply of T. L. Cox to you, answering your letter of May 19, 1903, and whether or not you wrote the slip dated August 6, and attached it to Cox's letter of May 25, and returned Cox's letter to him with the slip of August 6 attached to it.

"25. Did you write to the president of the street-railway company of Eureka Springs, during the last Legislature, and state to him that it would be necessary for the company to put

up $1,000, or some amount, to defeat the Holland bill which affected street railways, stating in your letter that you did not want any for yourself, but the other boys would have to have some; did you write such a letter in substance and effect?

"31. Did Representative Fuller deliver to you any mileage or mileage books during this last General Assembly of this State?

"32. Did you not tell Mr. James, Fuller's partner, that Fuller had delivered to you a mileage book?"

Thereupon the foreman of the grand jury proceeded with the witness, F. O. Butt, into the presence of the Pulaski Circuit Court, First Division, and there stated to the court that the grand jury had propounded to the witness the foregoing questions, and that he had refused to answer them; and the court, having heard the witness, decided that he was bound to answer the questions, and inquired of him if he persisted in his refusal, and, he having answered that he did, committed him to the jail of Pulaski County until he expressed a willingness to answer them, or until the further order of the court. Witness now seeks by certiorari to have such proceedings set aside.

It is argued that petitioner has mistaken his remedy, and that appeal is his mode of relief. In *Cossart* v. *State*, 14 Ark. 538, this court held that "whatever may be the remedy, where the inferior court, in punishing for contempt, shall exceed its lawful authority or jurisdiction, there is none according to existing law, by writ of error or appeal." Among the reasons given for such ruling, the court said: "If a contumacious witness, juror, party litigant, or counsel be entitled to an appeal or writ of error, he could also claim the full benefit of a supersedeas or stay of execution of the sentence by complying with the statute in such cases, and thereby effectually check the machinery of the court in its operation, and frustrate the wholesome administration of the law." But it is said that this rule has been changed by an act entitled "An act to permit defendants in felony cases to give bond after conviction in the circuit court," approved May 6, 1899. But an examination of that act will show that it does not extend the right of appeal, but regulates the manner in which it shall be granted, and gives to appellant the right to bail during the pendency of the appeal, and regulates the proceedings upon forfeiture of bail.

Petitioner, Butt, contends that a witness can not be punished for contempt for refusal to answer irrelevant questions. If a witness is interrogated before a court or officer about a matter entirely outside of its jurisdiction, he may refuse to testify. This, of course, does not authorize him to refuse to answer questions propounded in a legitimate cross-examination. But, if the court or officer has jurisdiction of the subject-matter involved, a witness should not be permitted to refuse to answer a question on the ground that it is irrelevant. To permit him to do so against the opinion of the court or officer taking his testimony would "be subversive of all order in judicial proceedings. The fact that such questions are irrelevant or improper" furnishes no reason for impeaching the commitment of the witness for refusing to answer them. Ex parte *McKee,* 18 Mo. 600; *People* v. *Cassels,* 5 Hill (N. Y.), 165; *Bradley* v. *Veazie,* 47 Me. 85; Rapalje on Contempt, § 66, and cases cited.

A statute of this State, section 3087 of Kirby's Digest, provides: "In all cases where two or more persons are jointly or otherwise concerned in the commission of any crime or misdemeanor, either of such persons may be sworn as a witness in relation to such crime or misdemeanor; but the testimony given by such witness shall in no instance be used against him in any criminal prosecution for the same offense." This has been held to be a valid statute by this court. *State* v. *Quarles,* 13 Ark. 307; *Cossart* v. *State,* 14 Ark. 539; *Pleasant* v. *State,* 15 Ark. 649; *State* v. *Bach Liquor Co.,* 67 Ark. 163.

In *State* v. *Bach Liquor Company, supra,* the court held that the word "concerned" in this statute is used in the sense of the word *participants.* It is said: "In relation to what crime shall he be sworn? Manifestly, the crime in the commission of which he participated with the defendant in whose trial for which he is sworn. In what criminal prosecution is he protected against his testimony? Obviously, criminal prosecution for the offense of which he was sworn to testify—'the same offense.' His protection is limited. He is not protected against the use of his testimony in other prosecutions. To the extent of the protection offered by the statute, he can be compelled to testify as to facts incriminating himself; but beyond this he can not be required to go in that direction, without violating the Constitution." Ac-

cordingly the court held that "an infant over the age of eighteen years, called to testify against a saloonkeeper indicted for selling liquor to him without the written consent of his parents or guardian, is privileged to refuse to answer where his answer would tend to establish his guilt of another crime, namely, procuring liquor without informing the saloonkeeper that he was a minor."

In cases in which the statute does not provide for protection, a witness can not be compelled to criminate himself. He may refuse to answer all questions the answers to which may criminate him. But who shall be the judge as to the crimination—the court or witness? If the court, how can he decide? The witness can not be required to show how an answer can criminate him.

In *Regina* v. *Boyes,* 1 B. & S. 311, 321, Chief Justice Cockburn said: "To entitle a party, called as a witness, to the privilege of silence, the court must see, from the circumstances of the case and the nature of the evidence which the witness is called to give, that there is reasonable ground to apprehend danger to the witness from his being compelled to answer, * * * * [although] if the fact of the witness being in danger be once made to appear, great latitude should be allowed to him in judging for himself of the effect of any particular question. * * * Further than this, we are of the opinion that the danger to be apprehended must be real and appreciable, with reference to the ordinary operation of law in the ordinary course of things—not a danger of an imaginary and unsubstantial character, having reference to some extraordinary and barely possible contingency, so improbable that no reasonable man would suffer it to influence his conduct. We think that a merely remote and naked possibility, out of the ordinary course of the law, and such as no reasonable man would be affected by, should not be suffered to obstruct the administration of justice. The object of the law is to afford to a party, called upon to give evidence in a proceeding *inter alios,* protection against being brought by means of his own evidence within the penalties of the law. But it would be to convert a salutary protection into a means of abuse if it were to be held that a mere imaginary possibility of danger, however remote and improbable, was sufficient to justify the withholding of evidence essential to the ends of justice."

In the Burr trial Chief Justice MARSHALL said that the

rule which, it is conceived, courts have generally observed, is this: "When a question is propounded, it belongs to the court to consider and to decide whether any direct answer to it can implicate the witness. If this be decided in the negative, then he may answer it without violating the privilege whch is secured to him by law. If a direct answer to it may criminate himself, then he must be the sole judge what his answer would be. The court can not participate with him in this judgment, because they can not decide on the effect of his answer without knowing what it would be; and a disclosure of that fact to the judges would strip him of the privilege which the law allows, and which he claims." *United States* v. *Burr,* 25 Fed. Cas. p. 38.

Mr. Justice MITCHELL, in *State* v. *Thaden,* 43 Minn. 253, 255, said: "All the authorities agree to the general proposition that the statement of the witness that the answer will tend to criminate himself is not necessarily conclusive, but that this is a question which the court will determine from all the circumstances of the particular case, and the nature of the evidence which the witness is called upon to give. * * * It would be difficult to conceive of an instance where the circumstances of the case, and the nature of the evidence called for, would be entirely neutral in their probative force upon the question whether or not there was a reasonable ground to apprehend that the answer might tend to criminate the witness. After consideration of the question and an examination of the authorities, our conclusion is that the best practical rule is that laid down in some of the English cases, and adopted and followed by Chief Justice COCKBURN, in *Regina* v. *Boyes.* * * * To this we would add that, when such reasonable apprehension of danger appears, then, inasmuch as the witness alone knows the nature of the answer he would give, he alone must decide whether it would criminate him. This, we think, is substantially what Chief Justice MARSHALL meant by his statement of the rule in the Burr trial."

We think that the conclusion of Mr. Justice MITCHELL as to the rule is correct. See 3 Wigmore on Evidence, § 2271, and cases cited.

According to the test stated, should witness Butt have been required to answer the questions propounded to him by the grand jury which he refused to answer?

Questions numbered 1 and 2 in reference to room 215 in the Fulk Building should have been answered. They were preliminary to other questions propounded to the witness at the same time, which he refused to answer, but offered to do so in the circuit court, and has not yet answered. The object of these questions 1 and 2, included, it seems, was to ascertain whether the room referred to was not a place where persons offering and receiving bribes met, and where he received a bribe or bribes. We can not see how any information acquired by answers to questions 1 and 2 could have been used for any purpose except to show that the room 215 was used as a place of meeting of two or more persons. If he knew that such persons committed bribery there, although jointly concerned, he could be compelled under the statutes of this State, to testify and tell what he knows in relation to the same. There is no reasonable ground to apprehend that any answer to the questions will criminate witness beyond what he can be required to do under the statute.

He should not have been required to answer questions numbered 16 and 17, as to the acceptance and use of free transportation by the railroads. A direct answer to these questions may criminate him.

The statutes of this State provide:

"No railroad or transportation company organized or doing business in this State under any act of incorporation or general law of the State now in force or which may be hereafter enacted shall grant any free pass in the cars or other modes of conveyance over the line of any such railroad or transportation company, for any length of time, or for any distance, to any officer of this State, legislative, executive or judicial, whereby any such officer may be transported for any length of time or for any distance over the line of any such railroad or transportation company, either free of charge therefor or for less compensation than that demanded or received from the general public."

"Any such railroad or transportation company that shall grant any free pass to any such officer in violation of this act shall forfeit and pay for every such offense not less than two hundred dollars, nor exceeding two thousand dollars, to be recovered in an action at law brought in the name of the State by the prosecuting attorney, etc.

"Any such officer, legislative, executive or judicial, of this State, who shall accept and use any such free pass to be transported for any distance over the line of any such railroad or transportation company, either free of charge or for less compensation than that received therefor from the general public, shall, for every case where such pass is used, be deemed guilty of a misdemeanor, and on conviction thereof shall be subject to a fine of not less than twenty dollars nor more than two hundred dollars, and shall be removed from office," etc. Kirby's Digest, § § 6694, 6695 and 6697.

By the violation of these statutes only one crime or misdemeanor is committed, and that is committed by the officer accepting and using the free pass. In this case the witness, Butt, being a member of the General Assembly of the State of Arkansas, by accepting and using a free pass issued by a railroad company in this State, committed a misdemeanor for the prosecution of which he only is liable, and in relation to which he can not, against his consent, be sworn or required to testify under section 3087 of Kirby's Digest. *State* v. *Bach Liquor Company,* 67 Ark. 163.

In the form questions numbered 20, 21, 22 and 23 were propounded to witness it can not properly be held that he ought to have been required to answer. The letters referred to were a part of the questions, and do not appear in the record before this court, and it does not appear that they were submitted to or examined by the circuit court. Without knowing their contents, we can have no conception as to the information sought by the questions. Question numbered 23 is objectionable for the further reason that it does not submit the letter of May 19, 1903, referred to therein, to witness for examination before answering. These questions may yet be propounded by the grand jury to the witness in an amended form.

Question numbered 25, in which reference is made to a suggestion to the president of the street-railway company of Eureka Springs as to the necessity of "putting up" money to defeat the Holland bill in the Legislature, ought to have been answered. The grand jury had the right to propound it for the purpose of acquiring information as to indictable offenses. Its object, obviously, was to obtain information as to bribery, if any, of the members of the General Assembly. If witness Butt was con-

cerned in such bribery, it must have been jointly with others.
In that event he could have been required to testify under the
statute.

Questions numbered 31 and 32, as to mileage or mileage
books delivered to witness, should have been answered. No suf-
ficient reason is shown for the refusal to answer them, except
that the answers to the same by the witness might criminate him.
If the mileage was delivered to him for a lawful purpose, his
answer could not do so. If, however, it was delivered to him by
another person as an inducement to commit a crime, and he com-
mitted the crime, such person would be jointly concerned with
him in the commission of the crime, and he could be required to
testify under section 3087 of Kirby's Digest. Of course, if no
crime was committed in consequence of the delivery of the mile-
age, he could not criminate himself by answering the questions.

The judgment of the circuit court is affirmed except in so
far as it is inconsistent with this opinion.

RIDDICK, J., did not participate.