MOISE, Justice.
Writs were granted from a judgment and sentence for contempt. They were granted because of the public importance of a matter relative to the investigation of the Police Department of the City of New Orleans. Any appearance here of criticism as distinguished from earnest presentment will be an error of the mind and not of the heart.
This Court has with patience examined the law and discarded all previous concepts. All obscure fallacies - have fallen- ppart as-leaves blown, by -the autumn wind. Like a breath ■ from the realm of common sense comes the reasoning in the return of the trial judge and the brief of the District Attorney for the Parish of Orleans; and the more intent our analysis of these two documents, the sounder our conclusion of the law becomes.
On April 16, 1953, the Commission Council for the City of New Orleans adopted Ordinance No. 18,531, which created a.'Special Citizens • Investigating Committee. The Committee was created “for the purpose and vested with the authority, power and duty to investigate the Police Department of the City of New Orleans.” Mr. Aaron M. Kohn was employed as Chief Investigator and Executive Direcr tor of the Committee.
The citation for contempt was brought by the Grand Jury of the Parish of Orleans against Aaron M. Kohn, because, after having been sworn as a witness, he refused to answer twelve certain stated questions. The questions themselves show that the grand jury was seeking to ascertain the names of persons identified in the Special Citizens Investigating Committee report by numbers and fictitious names, so that those who witnessed offenses against the State of Louisiana would appear and testify before the grand jury. Mr. Kohn claims that the information given to him was received on a confidential basis contingent on full *250 assurance that said identities would not be disclosed, and that such information is privileged under the law.
The defense relies, to a great degree, on the Special Citizens Investigating Committee policy memorandum of July 7, 1953, and this is urged as an authority for relator’s refusal to answer the questions propounded to him by the grand jury. It is claimed that the memorandum was authority for relator to withhold the names of his informers from any. one — even including the grand jury.
But, the State takes a vigorous position that such is a matter of law, and that this memorandum of July 7, 1953 could not create any privileges not existing by the Constitution or the Law or the Jurisprudence of the State; that a reading of the document will show that it was not intended to govern' any action other than the action of the Special Citizens Investigating Committee, because at the end of Paragraph 2 on Page 2 this memorandum is qualified by—
“So Long As They Engage In Activities On Our Behalf”—
and also by Clause 3 on Page 2, which clearly shows that the policy set forth had an important limitation, reading as follows:
“Their identities must not be disclosed, unless failure to do so would critically hamper the work and objectives of this committee.”
We do believe, as a matter of universal experience, that a shielded informer or witness will not make men more honest nor more likely to tell the truth, but will sometimes make them resort to dishonest means to accomplish what they pretend to be their honest objectives. This is only a statement of a general rule, and we do not mean to say that it has application here.
Relator contends that by its own term, “to the necessities of the Special Citizens Investigating Committee’s activities”, the Special Citizens Investigating Committee never intended to yield to grand jury investigation. Such a contention is a violation of natural law — that the lesser is superior to the greater — and it is invoked upon the assumption of a granted power given by the Ordinance of the City of New Orleans. Such an implication is dangerous, because in England the doctrine of implication was called the prerogative of the crown; its exercise cost Charles I his head; its constant exercjse brought about the revolution of the 17th Century in England; in France it was exercised by Louis XIV — “I am the State.”; it was the cause of the French Revolution. The doctrine of implication of powers was the cause of our Colonial grievances, and this doctrine was in truth and in fact the Mother of the American Revolution. The powers sought, to imply by interpretation that the lesser could be inclusive of the greater, are dangerous to the very existence of a Republican form of Government. As the dis *252 trict attorney of this parish has expressed it, “The Special Citizens Investigating Committee is more important and trustworthy than the grand jury itself.”
Section V of the ordinance creating the Special Citizens Investigating Committee .■specifically provides:
“That the Citizens Committee shall report facts and make recommendations from time to time as may be consistent with the purposes of the investigation. Such reports shall first be delivered to the Orleans Parish Grand Jury through its foreman for such action as that body shall consider proper.’’ (Italics ours.)
The Special Citizens Investigating Committee, composed of experienced and well educated men, certainly could not have intended that an uncomprehensible document .should be given by their investigator to the grand jury nor that the grand jury should have a- report which was in substance part incomprehensible or useless because of the naming of anonymous informers.
It is submitted, that full compliance with .the very terms and meaning of the ordinance requires that the names be made available as witnesses for the grand jury, .and this is the objective of the entire proceeding.
Relator has declared that the failure to poll the grand jury was error. The polling of the grand jury would have done no more than disclose the vote of each grand juror and would “muddy the waters on what is now clear.” Relator’s right to poll the grand jury must be legally predicated by law; it cannot be taken from thin air. Here would be establishment of a vicious precedent that a defendant has the right to poll a grand jury, even when an indictment is returned. There is certainly no provision of the law on this subject. The only provision that we find with respect to the polling of jurors is that provided for petit juries in the LSA-Revised Statutes 15:416.
It is further contended that the procedure followed in this case violates the secrecy of the grand jury, because the rule for contempt embodied verbatim the questions asked by the grand jury of relator and his answers. It must be observed, as a matter of common sense, that if the principal’s secrecy prevented the revelation of the questions and answers of witnesses before the grand jury, how could there ever be a citation for contempt if the court had not proceeded as here ?
Relator cites, as authority for his position, State v. Rodrigues, 219 La. 217, 52 So.2d 756, and he contends that the Rodrigues case holds that it is improper to proceed in cases of this kind by a formal rule for contempt. This is not exactly what that case decided, but it held that it was not essential to proceed by a formal rule. As the district attorney ably said, “a fortiori, if an informal rule or citation is proper, a formal one giving the relator full details cannot be *254 objected to and was certainly no source of prejudice to- him.”
Mr. Kohn. asserts that he was a public official and was entitled to the privilege of not having to reveal the names of his informants and investigators.
The pronounced jurisprudence generally holds that in many instances the names of informers are neither material nor important where such persons are not to be used as witnesses before the court or the grand jury. Privileges are never granted by third persons to witnesses, and such privileges cannot be invoked by a witness appearing before a grand jury.
The trial judge, in his return, uses potent language on this subject:
“To permit of defendant’s claim of privilege upon so tenuous an argument as here presented, ‘the power to ascertain the truth in judicial investigations and to administer justice accordingly, would depend, not upon the law of the land, but upon the private promises of secrecy upon the part of witnesses. * * * To sustain such a doctrine would render courts impotent and the effort to administer justice often times a mockery.’ ”
LSA-Revised Statutes 15:209 provides:
“The grand jury shall inquire into all crimes punishable with capital punishment and into all other crimes triable within the parish, when their attention has been directed to the subject of such crime either by instructions from the court or at the instance of the district attorney, and the grand jury ought to find an indictment in every case submitted to them in which, in their judgment, the evidence before them, if unexplained and uncontradicted, would warrant a conviction.”
LSA-Revised Statutes 15:209.1 further provides that members of the grand jury are not granted immunity from testifying before that body as to crimes committed against the State of Louisiana. In fact, fine and imprisonment is imposed if a member of the grand jury violates the section.
The defense has no basis in law, because Mr. Kohn’s only privilege as a witness was the privilege from self-incrimination, Article I, Section 11, of the Constitution of Louisiana, LSA, and this -he does not claim. If he cannot avail it for himself, how could he avail- it for the witnesses when one of the issues before the .grand jury is public bribery of the Police Department of the City of New Orleans? Article XIX, Section 13, of the Constitution of Louisiana of 1921 provides that a person cannot avail himself of the immunity from testifying as a witness when the subject of investigation is public bribery.
In the case of Rogers v. United States, 340 U.S. 367, 71 S.Ct. 438, 440, 95 L.Ed. 344, the United States Supreme Court said;
“If petitioner desired the protection of the privilege against self-incrimina *256 tion, she was required to claim it. United States v. Monia, 1943, 317 U.S. 424, 427, 63 S.Ct. 409, 410, 87 L.Ed. 376. The privilege 'is deemed waived unless invoked.’ United States v. Murdock, 1931, 284 U.S. 141, 148, 52 S.Ct. 63, 64, 76 L.Ed. 210. Furthermore, the decisions of this Court are explicit in holding that the privilege against self-incrimination ‘is solely for the benefit of the witness/ and ‘is purely a personal privilege of the witness.’ Petitioner expressly placed her original declination to answer on an untenable ground since a refusal to answer cannot be justified by a desire to protect others from punishment, much less to protect another from interrogation by a grand jury. * * * ” See, Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652; Goldstein v. United States, 316 U.S. 114, 62 S.Ct. 1000, 86 L.Ed. 1312, (Italics ours.)
The highest Court in the land concluded against the contentions of relator.
The trial judge aptly stated:
“To admit of any such privileges as claimed by defendant, would afford a shield to the very element in the police department defendant was employed to expose, and would permit of a grafting police officer to go unwhipped of justice.”
In our Louisiana Code of Criminal Law and ’ Procedure, LSA-R.S. 15:0.1 et seq., we find that certain persons are granted privileges from testifying as to confidential information. In Article 475, a privilege is extended to a legal adviser or attorney; in Article 476, physicians are granted privileges; and in Article 477, we find certain privileges granted to clergymen. Article 478 reads:
“The right to exclude the testimony, as provided in the three articles last preceding, is purely personal, and can be set up only by the person in whose favor the right exists. If the right is waived, the legal adviser, the physician and the clergyman, as the case may be, may be examined and cross-examined to the same extent as any other witness.”
A privilege is, therefore, usually provided for by the Legislature. State v. Nowell, 58 N.H. 314; Brown v. Walker, 161 U.S. 591, 16 S.Ct. 644, 40 L.Ed. 819.
The State’s brief says that there is no disposition on the part of any one to hamper the work of investigation by Mr. Kohn. This we believe to be true. But, we may make the observation that we do not believe that any man has an infallible understanding; that his mind can be so often misled by mistaken concepts of the law where there is an eamestment of accomplishment of results, or where there is prejudice, or where there is a particular lack of comprehension on the subject matter under discussion. All of us are affected by qur desires, colored by our hopes, and some *258 times weakened by our fears. All of this adds to the incorrectness of judgments.
Mr. Kohn’s conclusions are incorrect. We have here the combination of two grand juries standing back of and behind this request to give to them the names of witnesses so that they can c.arry on the work and aid in the investigation of the alleged corruption in the Police Department of this City.
The innocent should be protected and the guilty punished. Our form of government makes the grand jury an arm of the Court in the administration of the law. Any grant of power to persons not provided for by the law should be earnestly and forcibly rejected, or else we could be likened to the base Judean who threw away a pearl richer than all of his tribe.
For the reasons assigned, it is ordered that the writs and stay order issued herein be and they are hereby recalled and set aside. The judgment and sentence of the trial judge are affirmed.
FOURNET, C. J., concurs with written reasons.
McCALEB, J., concurs in the decree.
HAMITER, J., dissents with written reasons.