WILLIAM J. KIRBY, JUDGE, CIRCUIT COURT OF PULASKI COUNTY, ET AL

5328                                                      424 S. W. 2d 149

Opinion delivered February 19, 1958

*G. Thomas Eisele,* for petitioner.

*R. B. Adkisson,* Prosecuting Attorney, for respondents.

J. FRED JONES, Justice. This cause is submitted here on certiorari from the Pulaski County Circuit Court, First Division.

The record before us is meager indeed, but the petitioner and the respondent agree in their briefs, that on December 5, 1967, the petitioner, Lynn A. Davis, while serving in the capacity of director of the Arkansas State Police, appeared before the Pulaski County grand jury, in response to a summons, and refused to answer a question propounded to him by, or on behalf of, the grand jury while it was in session.

The record does reveal that the foreman, the secretary, and the chairman of the Law Enforcement Committee of the grand jury, together with the prosecuting attorney, appeared with Davis before the trial judge in chambers, and upon inquiry as to the purpose of the appearance in chambers, the foreman of the grand jury stated:

> "[W]e can't get any place because of the Colonel here just refuses to give us any information whatsoever, and he makes a statement that he don't intend to, and we feel like we have gone as far as we can go."

The court then inquired as to the nature of the information sought by the grand jury, and the foreman of the grand jury continued,

> "[H]e says he has an informant but he is not willing to give us the informant or anything to go on at all. It's all hearsay so far."

The trial court inquired of the foreman of the grand jury whether the question propounded to Davis was in connection with the investigation the grand jury had under consideration at the-present time, and the grand jury foreman answered in the affirmative. The prosecuting attorney stated to the court that it had been pointed out in the record that Davis had information to the effect that another person had personal knowledge and legal evidence presentable in court to the effect that a person —Kenneth Brown—was operating a gambling house, and that the only way the evidence could be obtained was through the disclosure of the person's name which Davis refused to divulge. The prosecuting attorney then requested the court reporter to read the information from the notes taken before the grand jury, but this was not followed through.

At the close of these discussions in chambers, the pertinent parts of the record are as follows:

"THE COURT: Well now, as I understand it, and all of the Grand Jury has all agreed, and the Colonel here also agrees, that the question asked him, and that he refused to answer was: What was the name of his informant? And, now the Court wants to ask you. I have decided that it is material, and I think under Section 43-916 I can propound the same question to you, and of course, if you refuse to answer you will be in contempt of this Court, and be dealt with contempt. Now, what is the name of your informant?

COL. DAVIS: I refuse to name the informant for fear of life or property.

* * *

THE COURT: * * * I am going to have to hold you in contempt and send you to jail until you change your mind."

Davis was then committed to the Pulaski County jail to be held until such time as he purged himself by answering the question propounded to him.

Grand juries have the "duty to inquire into all public offenses committed within the jurisdiction of the court in which they are impaneled, and to indict such persons as they find guilty thereof." (Ark. Stat. Ann. § 43-908 Repl. 1964.) But, "the grand jury can *receive* none but legal evidence...." (Ark. Stat. Ann § 43-918 [Repl. 1964].) (Emphasis supplied.) There is nothing in the récord before us that would reveal the nature of the investigation being conducted by the grand jury, or what information, if any, the grand jury desired, or hoped to obtain, from the individual whose identity Davis refused to reveal. The context in which the question was propounded to Mr. Davis is not in the record before us. The record does not reveal what the evidence of Davis's informant would have been, and the record does not reveal what, if anything, Davis had indicated it would be, if he did so indicate. Consequently, not knowing what Davis had testified that his unknown informant knew or could offer in the way of evidence, we have no way of determining whether it would have been legal evidence which the grand jury could receive. In fact, the record here places us in the same position Davis's testimony placed the grand jury as expressed by its foreman—it does not give us anything to go on at all.

Ark. Stat. Ann. § 43-916 (Repl. 1964) under which Davis was held in contempt and committed to jail, is as follows:

"When a witness, under examination, refuses to testify, or to answer a question put to him by the grand jury, the foreman shall proceed with the witness into the presence of the court, and there distinctly state the refusal of the witness, and if the court, *upon hearing the witness* shall decide that he is bound to testify or answer the question propounded, *he shall inquire of the witness if he persists in*

*his refusal,* and if he does, shall proceed with him as in cases of similar refusal in open court.'' (Emphasis supplied.)

The statute does not set out to what extent the witness is to be heard before the court shall decide whether or not he is bound to testify or answer the question propounded, but surely the statute contemplates more than simply hearing the witness refuse again to answer the same question propounded to him in the grand jury room, without first ascertaining the nature of the information the question is designed to produce.

Our grand jury system is derived from the common law of England, and during the more than one-hundred years it has been in operation in Arkansas, this appears to be the first case before this court in which contempt proceedings have been instituted against a police officer for failure to answer a question propounded by a grand jury. Indeed, we have found no cases indicating that a police officer has ever before refused to answer a question propounded to him by a grand jury.

As a usual procedure, the prosecuting attorney presents evidence to the grand jury based on information furnished him by investigating officers and the prosecuting attorney and police officers are usually on the same side in seeking indictments for criminal law violations and in presenting information or legal evidence to a grand jury for that purpose.

The petitioner, Davis, and the prosecuting attorney argue extreme views in opposite directions. The petitioner contends that as a police officer, he has an absolute privilege to refuse to reveal to a grand jury the source of any information he may have or obtain in connection with law violations. The prosecuting attorney contends that a police officer is bound to answer *any and all* questions propounded to him by a grand jury including the name of informers in all situations. We do not agree with either contention.

The privilege of a police officer in refusing to reveal the source of his information in criminal investigations ("informer privilege") is recognized as based on public policy under certain circumstances, the availability of which, depends upon the facts and circumstances of each particular case. *Roviaro* v. *United States*, 353 U. S. 53, 62 (1957); *McCray* v. *Illinois*, 386 U. S. 300 (1967); *State* v. *Edwards*, 317 S. W. 2d 441 (Mo. 1958); *Application of Heller*, 53 N. Y. S. 2d 86 (N. Y. 1945). Therefore, the privilege claimed by Davis in the case at bar is not an absolute privilege, but is qualified by the facts and circumstances of the particular case. In order, therefore, to determine whether Colonel Davis should have been required to answer the question, it is absolutely essential that we know something of the background, *i. e.,* the nature of the inquiry which led up to this particular question. In other words, there are circumstances under which the question "What is the name of your informant?" should have been answered. To the contrary, under different facts and circumstances, the privilege could have been claimed.

The only background given this court is in the statement made in the judge's chambers by the prosecuting attorney, in which he stated:

"Your Honor, it's been pointed out in the record that *this information* which Col. Davis has *is to the effect* that a person has personal knowledge and *legal evidence* presentable in Court *to the effect* that a person under consideration by the Grand Jury at this time—

Kenneth Brown.

Was operating a gambling house and Col. Davis has refused to divulge the name of the person who is possessed with this information, and it has been pointed out to Col. Davis that *his statement regarding what the information that this person has is hearsay information* and not presentable in Court,

and the only way the evidence can be obtained is through the disclosure of a person's name." (Emphasis supplied.)

It will at once be seen that this statement contains several conclusions. The prosecutor states that the unidentified person has *"legal* evidence" and he twice uses the expression, "to the effect." This, of course, is simply an interpretation of the alleged evidence by the prosecutor—and we are unable to tell from this record whether this interpretation was correct. We have no idea what Davis claimed the informant is supposed to have known. Did he go to Brown's premises on an unrelated matter and observe gambling while there? Did he participate in gambling on Brown's premises (which would make him an accomplice) or was he told by others that Brown was engaging in this illegal enterprise, and he then passed this information on to Davis? Was it Davis's own testimony or the information Davis testified that the informant had, that the prosecuting attorney considered "hearsay information"? These are examples of questions that have a direct bearing on the issue of whether the privilege could be rightfully claimed.

A statement could have been placed in the record by the foreman of the grand jury or the prosecuting attorney, with the assent of Davis (a stipulation), indicating the nature of the investigation that led to this particular question, or the foreman of the grand jury could have testified as to the facts which prompted the question propounded to Mr. Davis. He might have testified that Davis had stated that his informant *saw* gambling in progress, or he might have testified that Davis claimed that his informant *heard* that gambling was going on. In any event, the implications of the question "What is the name of your informant?" would be discernible in the setting the question was asked, and we would have some basis for determining whether the question would constitute or produce legal evidence which the grand jury could receive and which Davis was bound to give.

It may well be that the circuit judge had other information not in the record before us, in making his determination that the question was material. This is somewhat indicated by the prosecuting attorney's opening statement, "Your Honor, it's been pointed out *in the record.*" Subsequently, the prosecutor said to the court reporter, "Would you read the information." [Apparently referring to the alleged information held by the informant.] The reporter replied. "It will take some time to read back in my notes." And this was as far as the matter went. At any rate, no record is before us.

Even if the record was such that we could conclude that the question should have been answered, the answer should have been given in the secret confines of the grand jury room and not in the judge's chambers or in open court. Answers given to questions propounded by a grand jury are not public records and their secrecy is protected by statute. (Ark. Stat. Ann. § 43-928 [Repl. 1964]).

The statute § 43-916, supra, provides that upon hearing the witness, if the court should decide that he is bound to answer the question propounded by the grand jury, that the court "*shall inquire of the witness if he persists in his refusal.*" That is as far as the statute goes pertaining to the question and answer, and that is as far as the court should go pertaining to the question and answer. The statute does not direct the court to propound the same question in semipublic court chambers or in completely public open court, calling for the same answer the grand jury sought, and which the witness refused to answer in the secret confines of the grand jury room, and the reason for this is obvious. The statute does not set out what the court shall do if the witness *does not* persist in his refusal, but certainly in that event, the witness should be returned to the grand jury room where the question is to be answered and the jury's investigation continued.

From the record before us we are unable to say that Davis was guilty of criminal contempt in refusing to answer the question propounded to him, so the summary order of the trial court holding Davis in contempt is hereby set aside.

Byrd, J., dissents.

Conley Byrd, Justice, dissenting. Involved here is the issue of whether a policeman can invoke before the grand jury the so-called informer's privilege as to the identity of an informant. In addition, the majority opinion questions the sufficiency of the record and the procedure used by the trial court in determining whether the witness persisted in refusing to answer the question; and lastly holds that a grand jury cannot pursue a chain of witnesses to acquire legal testimony about a law violation or an exoneration of an alleged offense.

I

Before today's decision there was no Arkansas statute or case law recognizing the so-called informer's privilege. My research discloses only two cases, *In re Kohn*, 227 La. 245, 79 So. 2d 81 (1955), and *People* v. *Keating*, 286 App. Div. 150, 141 N. Y. S. 2d 562 (1955), where the invoking of the privilege before a grand jury has been attempted. The issue ordinarily arises during the trial of the accused—see Annot., 76 A. L. R. 2d 262 (1961).

Some jurisdictions follow the common law, as in *Roviaro* v. *United States*, 353 U. S. 53 (1957), where the privilege and its limits are stated as follows:

"What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law. *Scher* v. *United States*, 305 US 251, 254 83 L ed 151, 154,

59 S Ct 174; *Re Quarles,* 158 US 532, 39 L ed 1080, 15 S Ct 959; *Vogel* v. *Cruaz,* 110 US 311, 316, 28 L ed 158, 160, 4 S Ct 12. The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation.

"The scope of the privilege is limited by its underlying purpose. Thus, where the disclosure of the contents of a communication will not tend to reveal the identity of an informer, the contents are not privileged. Likewise, once the identity of the informer has been disclosed to those who would have cause to resent the communication, the privilege is no longer applicable.

"A further limitation on the applicability of the privilege arises from the fundamental requirements of fairness. Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations the trial court may require disclosure and, if the Government withholds the information, dismiss the action. Most of the federal cases involving this limitation on the scope of the informer's privilege have arisen where the legality of a search without a warrant is in issue and the communications of an informer are claimed to establish probable cause. In these cases the Government has been required to disclose the identity of the informant unless there was sufficient evidence apart from his confidential communication.

\* \* \* \*

"We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors."

Other jurisdictions have adopted by statute American Law Institute Model Code of Evidence Rule 230, which provides:

"A witness has a privilege to refuse to disclose the identity of a person who has furnished information purporting to disclose a violation of a provision of the laws of this State or of the United States to a representative of the State or the United States or a governmental division thereof, charged with the duty of enforcing that provision, and evidence thereof is inadmissible, unless the judge finds that (a) the identity of the person furnishing the information has already been otherwise disclosed or (b) disclosure of his identity is essential to assure a fair determination of the issues."

In 76 A. L. R. 2d 275 (1961) the theory of the privilege is stated as follows:

"The privilege is founded upon public policy, and seeks to further and protect the public interest in effective law enforcement. It recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law enforcement officers, and by preserving their anonymity, encourages them to perform that obligation. The privilege is designed to protect the public interest, and *not to protect the informer.*" (Emphasis supplied.)

Thus it is seen that the theory and purpose behind the privilege are not complicated matters but in fact are within the comprehension of the average citizen. Furthermore, since the privilege is not for the protection of the informer, but for the protection of the public interest, it logically follows that some public official or public body must have the discretion to determine when it is or is not in the public interest to invoke the privilege.[1] In fact, practical law enforcement demands that such discretion be deposited with some public official or body,[2] for obviously the law enforcement policies of our cities would be hamstrung if a police chief had to go before the courts and make the showing required by the majority opinion here before he could obtain the name of an informant known only by his subordinates who had different views as to the *public interest.*

If, as demonstrated above, the informer's privilege is not applicable as between a rookie policeman and a city police chief, or as between a state patrolman and the state police director, then why is not the same logic applied to a policeman and the grand jury? In arriving at this logic I accede to Lincoln's theory that our government is "of the people, by the people and for the people."

Our grand juries are directed by law, Ark. Stat. Ann. § 39-206 (Repl. 1962), to consist of sixteen persons of good character, approved integrity, sound judgment and reasonable information. By Ark. Stat. Ann. § 43-908 (Repl. 1964) the grand jury has the power and the duty ". . . to inquire into all public offenses committed

[1]The majority opinion recognizes that the applicability of the privilege is not left to the officer. 8 Wigmore, Evidence (McNaughton rev. 1961) § 2379 (g) points out that the lawful limits of the privilege are extensible beyond any control if its applicability is left to the determination of the very official whose interest it may be to shield a wrongdoing under the privilege.

[2]During oral argument petitioner conceded that the privilege was not applicable as between a rookie policeman and a city police chief.

within the jurisdiction of the court in which they are impaneled, and to indict such persons as they find guilty thereof.'' Ark. Stat. Ann. § 43-907 (Repl. 1964) specifically directs it to inquire ''into the wilful and corrupt misconduct in officers of every description in the county.'' The right to subpoena witnesses is given by Ark. Stat. Ann. § 43-912 (Repl. 1962). Thus it is obvious that the grand jury is an arm of the court, comprising a body selected from the people and recognized by statute as having a standing, from the administration of justice viewpoint, superior to that of the policeman. This is emphasized by virtue of the subpoena power and the mandatory direction to inquire into the wilful and corrupt misconduct of officers of every description.

The fact that only two cases have been found where an attempt was made to invoke the informer's privilege before a grand jury demonstrates that grand juries are capable of understanding the nature of the privilege and of determining what is in the public interest. The Pulaski County grand juries are no exceptions. The lists of those selected to serve are usually published in the state's leading newspapers—among those selected are farmers, bank directors, labor leaders, contractors, advertising executives and advisors to governors. These people are as capable as any public official in determining what is in the ''public interest.''

Therefore it is my opinion that as between a policeman and a grand jury, the policeman should not be entitled to invoke the informer's privilage. Of course this does not mean that the policeman is not entitled to state his position to the grand jury and the court before identifying his informer.

## II

The record made before the trial court is not long. Since I disagree with the majority as to its sufficiency, I am attaching it hereto as an appendix.

### III

The procedure followed by the court here is identical with that approved in *Ex parte Butt,* 78 Ark. 262, 93 S. W. 992 (1906). The majority opinion suggests that the trial court erred in asking petitioner to give it the name of the informant—*i. e.* the trial court should have instructed petitioner to return to the grand jury room and answer the question. In this, the majority opinion does violence to the statute, Ark. Stat. Ann. § 43-916 (Rep. 1964), which provides:

> "When a witness, under examination, refuses to testify, or to answer a question put to him by the grand jury, the foreman shall proceed with the witness into the presence of the court, and there distinctly state the refusal of the witness, and if the court upon hearing the witness shall decide that he is bound to testify or answer the question propounded, he shall inquire of the witness if he persists in his refusal, and if he does, shall proceed with him as in cases of similar refusal in open court."

The statute requires the trial court to determine only (1) whether the witness is bound to answer the question, and (2) if he persists in his refusal. The summary procedure used by the trial court was also affirmed in *Lockett* v. *tate,* 145 Ark. 415, 224 . W. 952 (1920). ee also *Uphaus* v. *Wyman,* 360 U. . 72 (1959).

### IV

By innuendo it is suggested that the record is insufficient because the grand jury could receive only "legal evidence" and that the informant's name would not necessarily be "legal evidence" within the meaning of Ark. Stat. Ann. § 43-918 (Repl. 1964). The statute provides:

> "The grand jury can receive none but legal evidence; they are not bound to hear evidence for the

defendant, but it is their duty to weigh all the evidence before them, and if they believe that other evidence within their reach will explain away the charge, they should order the evidence to be produced.''

I disagree with the suggestion (1) because it lifts the phrase ''legal evidence'' out of its context; (2) because it ignores the fact that a grand jury is ordinarily composed of laymen; and (3) because it presupposes that if the name of the informant were irrelevant or immaterial, the grand jury could not make any inquiry about it.

With respect to the relevancy of testimony, in *Ex parte Butt, supra,* we held:

''Petitioner, Butt, contends that a witness cannot be punished for contempt for refusal to answer irrelevant questions. If a witness is interrogated before a court or officer about a matter entirely outside of its jurisdiction, he may refuse to testify. This, of course, does not authorize him to refuse to answer questions propounded in a legitimate cross-examination. But, if the court or officer has jurisdiction of the subject-matter involved, a witness should not be permitted to refuse to answer a question on the ground that it is irrelevant. To permit him to do so against the opinion of the court or officer taking his testimony would 'be subversive of all order in judicial proceedings. The fact that such questions are irrelevant or improper' furnishes no reason for impeaching the commitment of the witness for refusing to answer them. *Ex parte McKee,* 18 Mo. 600; *People v. Cassels,* 5 Hill (N. Y.), 165; *Bradley v. Veazie,* 47 Mo. 85; Rapalje on Contempt, § 66, and cases cited.''

Under the majority's suggestion, a grand jury can no longer inquire of any witness as to who told him

that gambling was going on at the place of business of the person under investigation, unless the witness can also say that his informant saw the gambling going on. I do not think the statutes should be so constrictively interpreted.

It therefore appears to me, for the reasons stated, that the name of petitioner's informant was a matter into which the grand jury was entitled to inquire, and that he persisted in his refusal after the trial court found that he was bound to answer the question.

I would deny the petition for certiorari.

PROCEEDINGS HEARD BEFORE HON. WILLIAM J. KIRBY IN HIS CHAMBERS, FOURTH FLOOR PULASKI COUNTY COURTHOUSE, LITTLE ROCK, ARKANSAS, ON THE FIFTH DAY OF DECEMBER, 1967, AT THE HOUR OF APPROXIMATELY 1:30 P.M.:

THE COURT: First, let's let the record show what this is all about. Let the record show that the Pulaski County, Foreman of the Grand Jury, Mr. Burroughs, and the Grand Jury Secretary, Mr. Wimberly, and Chairman of the Law Enforcement Committee, Mr. Larry Robinson, along with the Prosecuting Attorney and Chief Davis appeared before me at—I'll do it right, 1:30.

Now, Mr. Prosecutor, you may state, or Mr. Foreman, you may state what the purpose of this is for.

MR. BURROUGH: Well, Judge, Your Honor, we can't get any place because of the Colonel here just refuses to give us any information whatsoever, and he makes a statement that he don't intend to, and we feel like we have gone as far as we can go.

THE COURT: Well, now, what is the nature of the information? What do you want to know? I will have

to know so I can ask him, to see whether I think it should be asked.

MR. BURROUGHS: Well, he says he has an informant but he is not willing to give us the informant or anything to go on at all. It's all hearsay so far.

### EXHIBIT 'A'

THE COURT: Well now, is this in connection with the investigation you have got under way at the present time?

MR. BURROUGHS: Yes.

MR. ADKISSON: Your Honor, it's been pointed out in the record that this information which Col. Davis has is to the effect that a person has personal knowledge and legal evidence presentable in Court to the effect that a person under consideration by the Grand Jury at this time—

THE COURT: What's his name?

MR. ADKISSON: Kenneth Brown.

THE COURT: All right.

MR. ADKISSON: Was operating a gambling house and Col. Davis has refused to divulge the name of the person who is possessed with this information, and it has been pointed out to Col. Davis that his statement regarding what the information that this person has is hearsay information and not presentable in Court, and the only way the evidence can be obtained is through the disclosure of a person's name.

THE COURT: Well, of course, the Grand Jury is not supposed to consider anything confidential evidence. You've read the Statute here, 43-916, haven't you?

COL. DAVIS: I'm not sure, Your Honor.

THE COURT: Well, you can have the book there and read it or you can do it.

COL. DAVIS: Which one?

THE COURT: 43-916. Right down at the bottom there.

COL. DAVIS: Yes, sir.

THE COURT: Now, why don't you think that applies to you?

COL. DAVIS: Supreme Court decisions have been made that the police officer and his informant enjoys somewhat the same rights as clergy and people—

THE COURT: The high Supreme Court has decided that?

COL. DAVIS: The U. S. Supreme Court.

THE COURT: Well, I'm not bound by their rules in this particular instance here. This is a hearing before the Grand Jury. Now, has our Supreme Court, to your knowledge?

COL. DAVIS: I don't know.

THE COURT: If they have, well, you have some law that I don't know.

COL. DAVIS: I don't know, but I was advised by legal counsel that I did not have to.

THE COURT: I can't make you disclose it all.

MR. ADKISSON: Would you read the information?

REPORTER: It will take some time to read back in my notes.

MR. ADKISSON: Well, it was right at the first.

THE COURT: Well now, as I understand it, and all of the Grand Jury has all agreed, and the Colonel here also agrees, that the question asked him, and that he refused to answer was? What was the name of his informant. And, now the Court wants to ask you. I have decided that it is material, and I think under Section 43-916 I can propound the same question to you, and of course, if you refuse to answer you will be in contempt of this Court, and be dealt with contempt.

Now, what is the name of your informant?

COL. DAVIS: I refuse to name the informant for fear of life or property.

THE COURT: Well, I saw something in the paper the other day where you weren't particularly concerned, that you did not feel or think that these boys would hurt him.

COL. DAVIS: Well, of course, I said life and or property.

THE COURT: I don't know whether you can believe everything you read in the paper, but that is not much of a reason. Call my bailiff in here. I am going to have to hold you in contempt and send you to jail until you change your mind.