Ex parte David R. McCLELLAND,
Petitioner.

No. 36671.

Missouri Court of Appeals,
St. Louis District,
Division Two.

March 13, 1975.

Motion for Rehearing or Transfer to Court
En Banc or to Transfer to Supreme
Court Denied April 14, 1975.

Application to Transfer Denied
May 12, 1975.

Charles D. Kitchin, James C. Jones, III, Kent W. Fanning, St. Louis, for appellant.

John C. Danforth, K. Preston Dean, II, Jefferson City, J. Brendan Ryan, John F. White, St. Louis, for respondent.

Husch, Eppenberger, Donohue, Elson & Cornfield, Shulamith Simon, St. Louis, for petitioner.

James R. Russell, Pros. Atty., Washington County, Potosi, for respondent.

SMITH, Chief Judge.

This is an original proceeding in habeas corpus arising from a sentence for contempt entered against petitioner. We issued our order to show cause, stayed the commitment, ordered briefs and heard oral argument. We now order petitioner discharged.

David McClelland is a policeman in the Florissant, Missouri, police department assigned to narcotics investigation. In that capacity he was contacted by certain citizens who did not wish their identities known. They gave McClelland information, admittedly hearsay once-removed as to them, concerning a series of four deaths in the Potosi, Missouri, area which were allegedly the product of a narcotics war. They asserted that law enforcement officers in Washington County were involved and "on the take", and stated that they, the informants, would not tell their story to the local police, Sheriff's office or highway patrol, although they would tell it to the Attorney-General's office. Although all four deaths had been treated as accidents by local authorities, it was the informants' belief that they were in fact murders. There was additional information supplied including names of the alleged victims, alleged actual means of death, names of alleged prospective victims, and names of alleged known narcotics

users and pushers. It is unnecessary to detail that information here.

McClelland prepared a written report of his conversation but did not identify the sources. This report was transmitted to his superior. By some method, not revealed by the record, this report reached the hands of the Prosecuting Attorney of Washington County. He then requested the Circuit Court to convene a grand jury to investigate the information contained in McClelland's report. The request was granted and McClelland was called as a witness before the grand jury. He answered all questions put to him except when asked to identify his informants. He declined to do that, claiming an "informant's privilege" and advancing the contention that revelation of informants' names would make his law enforcement duties impossible to perform. He was brought before the Circuit Judge and ordered to answer the question of the identity of his informants before the grand jury. He returned to the grand jury room and again refused to answer. He was returned to the Circuit Court where he acknowledged his refusal. The Circuit Judge held him in contempt of court in the court's presence and ordered imprisonment for 7 days. The petition for a writ of habeas corpus immediately followed.

Petitioner raises certain procedural grounds in an attack upon the judgment and commitment order, which if ruled favorably to petitioner would obviate temporarily the need for our decision on the underlying question of the scope of an "informant's privilege". We decline to decide the case upon procedural grounds for we regard the underlying question to be an important one and one which will probably require a decision eventually between these parties.

We deal here with "privilege". The concept of privilege is an exception to the usual rule of courts that all evidence material, relevant and competent to a judicial proceeding shall be revealed if called for.[1] Justice operates upon disclosure, not secrecy. Society in general, and courts and legislatures in particular, have recognized that certain exceptions to that general rule must be made, either for the protection of basic human individual needs or for the protection of the society itself. Although it is difficult to generalize when dealing in the field of privilege, it can be generally said that those privileges which protect basic individual needs are absolute privileges, yielding to no higher priority, for our nation recognizes no higher priority. Such is the status of lawyer-client, physician-patient, cleric-penitent and self-incrimination privileges.

At one time in our history such absolutism was also recognized in those privileges accorded to protect the government itself.[2] But as courts increasingly confronted decisions between protection of government and protection of individual rights, they also increasingly recognized that where absolute privilege in the government interfered with constitutionally mandated individual rights the former must yield, or as usually stated "be qualified."[3]

We deal here with a privilege designed and intended for the protection of the government.

> "It is a general rule of law that the duty rests on every citizen to communicate to his government any information he has of the commission of crimes against it, and to encourage such laudable conduct, the information thus given is a government secret and will not be disclosed." United States v. Keown, 19 F.Supp. 639, l. c. 641 (W.D.Ky.1937).

1. 8 Wigmore, Evidence, Chapt. 76, § 2192, (McNaughton rev. 1961).

2. In re Quarles, 158 U.S. 532, 15 S.Ct. 959, 39 L.Ed. 1080 (1895); State v. Bailey, 320 Mo. 271, 8 S.W.2d 57 (1928).

3. Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957); United States v. Nixon, 418 U.S. 904, 94 S.Ct. 3193, 41 L.Ed.2d 1152 (1974); State v. Edwards, 317 S.W.2d 441 (Mo. banc 1958); State v. Cookson, 361 S.W.2d 683 (Mo.1962).

■ Courts have continually recognized (as practically they must) that without information supplied by citizens, enforcement of the law would be extremely difficult, if not impossible. They have also recognized that unless citizens supplying such information can do so in confidence, then fear, involvement or other causes will preclude much, if not most, of the citizen disclosure. Therefore, an informant's privilege has been recognized since at least 1790,[4] and in this State confirmed as recently as 1974.[5] There are certain limitations to the privilege. It applies only to the identity of the informant not to his communication. It applies only when the informant is unknown. It applies only to communications to such officers as have a responsibility or duty to investigate or prevent public wrongs, and nọt to officials in general.[6]

As stated by 8 Wigmore, Evidence, Chap. 85, Sec. 2374(f)(3) at 767-8 (McNaughton rev. 1961):

> "The truth is that the principle is a large and flexible one. It applies wherever the situation is one where without this encouragement the citizens who have special information of a violation of law might be deterred otherwise from voluntarily reporting it to the appropriate official."

■ The purpose of the privilege is fully met in this case and each of the limitations set forth above are present. The information was given to a police officer with the responsibility to investigate or prevent public wrongs. It was given by informants unknown to anyone except the police officer. McClelland refused only to supply the names of the informants; he fully testified to the communications from them.

■ The Prosecuting Attorney for Washington County contends no privilege exists in this case at all. Initially this is premised on the contention that McClelland is only a municipal policeman and therefore not an "agent of the state." Municipalities are subdivisions of the state and their police forces are charged with the investigation and prevention of crime. Nor does the prosecutor's parochial argument that McClelland has no business obtaining information about crimes in Washington County suffice to preclude the privilege. McClelland is involved in narcotics violation investigation. Traffic in narcotics and crimes resulting therefrom know no geographic boundary lines, local, county or state. The information furnished by the informants indicated that the crimes occurring in Washington County were directly connected to a narcotics ring in the St. Louis area. Such information was relevant to McClelland's duties. Further the informants specifically refused to make such information available to local Washington County law enforcement officials, allegedly because of a belief that such officials were involved. It is probable that the information conveyed to McClelland concerning alleged serious crimes and future crimes in Washington County would never have come to the attention of Washington County officials at all had not the informants sought out McClelland under confidential conditions.

■ The prosecutor also suggests that no privilege exists because of a "pecking order" among law enforcement authorities. This is premised upon the oft-repeated judicial statement that the privilege belongs to the state, not the informant.[7] Therefore, it is contended it can be waived by some higher level law enforcement officer,

4. Rex v. Akers, 170 Eng.Rep. 850 (1790).

5. State v. Taylor, 508 S.W.2d 506 (Mo.App. 1974).

6. 8 Wigmore, Evidence, Chap. 85, Sec. 2374 (f), at 765-7 (McNaughton rev. 1961); Rovario v. United States, 353 U.S. 53, 1. c. 60, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957); People v. Keating, 286 App.Div. 150, 141 N.Y.S.2d 562 (1955) [3].

7. State v. Taylor, 508 S.W.2d 506 (Mo.App. 1974), [5]; Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957); In re Quarles, 158 U.S. 532, 15 S.Ct. 959, 39 L.Ed. 1080 (1895).

which the prosecutor contends he and the grand jury are. This misconceives the nature of the privilege. It is true that the privilege is one which can be bestowed only by the state, acting through its law enforcement officers.[8] No citizen is automatically entitled to the privilege as is true of the human needs privileges heretofore mentioned. But we seriously question that once the pledge of anonymity is given by the state it can be withdrawn unilaterally by the state.[9] The purpose of the privilege has been set out earlier. If it is to have meaning and accomplish its beneficial effect, the informant must be able to rely upon the confidential nature of his communication. Such reliance would be ephemeral, at best, if the anonymity promised were subject to review by every higher ranking police officer, prosecuting attorney, or grand jury[10] in the state. To impose such restrictions upon the privilege would be to destroy it, and this we will not do.

■ As heretofore mentioned, the privilege is a qualified one. While at one time the privilege was absolute, the courts have now recognized that there are occasions on which it cannot be invoked or enforced.[11] The language concerning qualification is frequently used in a general way perhaps so as not to foreclose later extension of the qualification doctrine. But our extensive research, and that of counsel, has revealed no case in which the qualification of the privilege has been upheld except those in which the identification of the informant is necessary in the defense of an accused. Those cases arise in two situations, i. e.: one, where the informant is himself a witness to or participant in the crime or, two, where the reasonableness of a law enforcement officer's conduct is dependent upon the reliability of an informant.[12] Normally, in those situations the prosecution must either identify the informant[13] or cease the prosecution.[14] The high priority which the courts of this country place upon the importance of a fair trial with a right to confront witnesses has made these qualifications necessary.[15] We have found no other qualification to the privilege, and we will engraft none here. Neither situation above described is even remotely present here. We find the privilege was properly invoked by McClelland and he was not compelled to answer the question posed.

■ It is contended that it is the province of the trial judge to determine whether the privilege may be asserted. As with any privilege, it is the province of the trial judge to determine whether the facts establish the existence of the privilege and whether it has been waived. It is not the province of the trial judge to determine whether the privilege should be invoked except when the "fair trial of the defendant" qualification is involved.[16]

8. No contention is here made that McClelland lacked authority from his superiors to promise anonymity, or that his invocation of the privilege was fraudulent or in bad faith.

9. See In re Quarles, *supra*, which states: "The right of a citizen informing of a violation of law, like the right of a prisoner in custody upon a charge of such violation, to be protected against lawless violence, does not depend upon any of the amendments to the constitution, but arises out of the creation and establishment by the constitution itself of a national government, paramount and supreme within its sphere of action." l. c. 536, 15 S.Ct. l. c. 961.

10. For a thorough discussion of the province, prerogatives and limitations of grand juries, see United States v. Calandra, 414 U.S. 338, l. c. 346 and 353, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974) which recognizes the availability of valid or recognized privileges before a grand jury.

11. See footnotes 2 and 3, *supra*.

12. See Roviaro v. United States, *supra*, 1. c. 61, 77 S.Ct. 623 and cases there cited; State v. Edwards, *supra*; State v. Cookson, 361 S.W.2d 683 (Mo.1962); State v. Taylor, *supra*.

13. We need not and do not reach the question whether the prosecution may identify the informant without his consent.

14. See Roviaro v. United States, *supra*, 1. c. 61, 77 S.Ct. 623; United States v. Keown, *supra*, 1. c. 646.

15. Roviaro v. United States, *supra*; United States v. Nixon, *supra*.

16. Scher v. United States, 305 U.S. 251, 59 S.Ct. 174, 83 L.Ed. 151 (1938); Roviaro v. United States, *supra*; State v. Edwards, *supra*, [4].

The language of some opinions that the trial court must balance the public interest in determining whether the privilege can be invoked arises where the counterbalance to the public interest in non-disclosure is the fair trial of a defendant. The balancing determines whether the qualification applies; it does not create a new qualification. If the communication is privileged (as this one was) and has not been waived (this one wasn't) then the privilege must be respected. Neither the grand jury nor the Circuit Court could compel McClelland to give the requested information.[17] It follows that McClelland was not in contempt of court for failing to reveal his sources.

Petitioner is ordered discharged.

STEWART and SIMEONE, JJ., concur.

---

17. We have found or been cited to only three cases involving the privilege as it relates to grand jury proceedings where the witness was a police officer or public official. Fischer v. Citizens Committee, 72 Misc.2d 595, 339 N.Y.S.2d 853 (Sup.Ct.1973) ; State v. Roe, 26 Ohio St.2d 243, 271 N.E.2d 296 (1971) ; Davis v. Circuit Court, 244 Ark. 142, 424 S.W.2d 149 (1968). In the first two the privilege was upheld. The Arkansas case apparently recognized the "fair trial" qualification also applied to grand jury proceedings. The Ohio case indicated the qualification might apply if the grand jury was investigating guilt of a specified party, but did not in a general inquiry, as is involved in the case before us. The New York case limited the qualification to trial, not grand jury proceedings. Considering the nature of grand jury proceedings, and the absence of a right to confrontation, we find the New York case more soundly reasoned.