**Darlene TYE, Plaintiff,**

v.

**CITY OF JACKSONVILLE,
FLORIDA, Defendant.**

No. 87–684–Civ–J–12.

United States District Court,
M.D. Florida,
Jacksonville Division.

Jan. 19, 1989.

Courtney Johnson, Fortune, Johnson & Corse, Jacksonville, Fla., for plaintiff.

Gail Stafford, Steven E. Rohan, Asst. Counsels, Office of Gen. Counsel, Jacksonville, Fla., for defendant.

## ORDER AFFIRMING MAGISTRATE'S RULING

MELTON, District Judge.

This cause is before the Court on defendant's Objection and Motion to Modify or Set Aside Magistrate's Order Denying Defendant's Motion for Protective Order on Behalf of Defendant and to Enter Protective Order on Behalf of Defendant, filed herein on January 13, 1989. Plaintiff responded with her memorandum in opposition to the objection and motion, filed herein on January 17, 1989. The Court heard oral argument on the objection and motion on January 18, 1989.

The Magistrate entered an order on January 4, 1989, in which plaintiff's motion for leave to take depositions was granted and defendant's motion for protective order was denied. At issue is whether plaintiff may depose the Mayor of Jacksonville, Tommy Hazouri ("Hazouri" or "the Mayor"), and his Chief Administrative Officer, Mitch Atalla ("Atalla"), in order to inquire into their motives in appointing Matt Frankel ("Frankel") to the position of Civil Defense Director. The Amended Complaint, in Count II, alleges that the failure to promote plaintiff to the position now held by Frankel violated plaintiff's right to freedom of speech, particularly as expressed by her complaints about, and litigation over, alleged sex discrimination perpetrated by defendant against plaintiff. Because the Magistrate acted pursuant to the authority delegated to him by statute and the Local Rules of this Court, his ruling may be modified or set aside only if it is clearly erroneous or contrary to law. Defendant proposes the latter.

The core of defendant's argument is a claim of immunity for the decision of the Mayor on personnel matters. Defendant relies mainly on the authority of *Mayor of Philadelphia v. Educational Equality League*, 415 U.S. 605, 94 S.Ct. 1323, 39 L.Ed.2d 630 (1974) and *James v. Wallace*, 533 F.2d 963 (5th Cir.1976). These decisions, both decided prior to the inclusion of municipalities and other bodies of local government within 42 U.S.C. § 1983, *Monnell v. New York City Dep't of Social*

*Servs.,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978), suggest support for the proposition that an executive decisionmaker in municipal and state government may be protected from suit for some personnel decisions. However, both of these leading cases disclaim any decision on the issue of immunity. In *Mayor of Philadelphia,* the Supreme Court noted that it "need not go so far" as to resolve questions of municipal executive immunity. *See* 415 U.S. at 616, 94 S.Ct. at 1331. Similarly, the Fifth Circuit "express[ed] no opinion on the question of whether immunity, qualified or otherwise, exists for state executive officials in cases like this one." *James,* 533 F.2d at 968.

As later interpreted, *Mayor of Philadelphia* and *James* apply only to appointments involving substantial policymaking importance essential to an elected official's ability to carry out the political mandate of the people. *Searcy v. Williams,* 656 F.2d 1003, 1008 n. 2 (5th Cir. Unit B Sept. 1981). If an appointed position is more than a mere conduit for carrying out the political mandate of an elected official, then the fourteenth amendment (and by incorporation the first amendment) applies. *Id.* at 1009. The record in this case, however, does not demonstrate that the Director of Civil Defense falls within the rule of *Searcy.* Even if *Mayor of Philadelphia* applies, it may simply limit the remedy of ordering placement in the disputed position, without affecting other remedies for the discriminatory conduct alleged. *Cf. United States v. Yonkers Bd. of Educ.,* 837 F.2d 1181, 1235 (2d Cir.1987), *cert. denied,* — U.S. ——, 108 S.Ct. 2821, 100 L.Ed.2d 922 (1988).

It is noteworthy that *Mayor of Philadelphia* and *James* both considered and rejected disparate impact claims against executive appointments while *Searcy* and *Yonkers Board of Education* accepted challenges based in intentional disparate treatment. Indeed, defendant's authorities preceded the Supreme Court's declaration that fourteenth amendment claims require proof of discriminatory intent. Defendant maintained at oral argument that the Mayor's prerogative to make appointments encompasses a right to discriminate in violation of the constitutional rights of appointees— checked only by the electoral system, regardless of the willingness of the electorate to impose the check. The Court does not accept defendant's analysis. The Constitution's protections from intentional discrimination exist because the political processes are not always sensitive to the abridgment of minority rights. *See United States v. Carolene Products Co.,* 304 U.S. 144, 152 n. 4, 58 S.Ct. 778, 783 n. 4, 82 L.Ed. 1234 (1938). Intentional, unconstitutional discrimination is a wrong of such magnitude that it cannot go unredressed. *Cf. Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979).

Defendant proposes to treat every city employee appointed by the Mayor as the recipient of a de facto pink slip when a new administration enters office. This tradition, when executed voluntarily, poses no constitutional question. In contrast, the mandatory termination of all appointees for partisan reasons infringes the first amendment rights of those employees. *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980) (assistant public defenders); *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) (deputy sheriffs). Consequently, defendant's desire to insulate the Mayor cannot be reconciled with prevailing legal doctrine.

Defendant analogizes to various other immunities, including congressional immunity pursuant to the speech and debate clause and the absolute immunity of the President from damages liability arising from official acts. Established law, however, undermines defendant's argument. "The Court has generally been quite sparing in its recognition of claims of absolute official immunity." *Forrester v. White,* 484 U.S. 219, 108 S.Ct. 538, 542, 98 L.Ed.2d 555 (1988). In *Forrester,* the Court reviewed the various immunities. Regarding the legislative immunity conferred by the speech and debate clause, "the Court has been careful not to extend the scope of the protection further than its purposes require." *Id.* (citations omitted). Regarding officials of the executive branch, the Court

recognized the absolute immunity of the President, but noted that this immunity is unique in the constitutional scheme and "does not extend indiscriminately to the President's personal aides or to cabinet level officers." *Id.* 108 S.Ct. at 543 (citations omitted).

Most importantly for present purposes, the *Forrester* Court stated: "Nor are the highest executive officials in the States protected by absolute immunity under federal law." *Id.* (citing *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). In reaching the conclusion that judges also do not enjoy absolute official immunity for employment decisions, the Court reasoned:

[A] judge who hires or fires a probation officer cannot meaningfully be distinguished from a district attorney who hires and fires assistant district attorneys, or indeed from any other executive branch official who is responsible for making such employment decisions. Such decisions, like personnel decisions made by judges, are often crucial to the efficient operation of public institutions (some of which are at least as important as the courts), yet no one suggests that they give rise to absolute immunity from liability in damages under § 1983.

*Id.* 108 S.Ct. at 545. While this conclusion leaves qualified immunity available, *id.,* the standard for qualified immunity of officers in the executive branch of government involves an examination of the circumstances and beliefs of the decisionmaker, *see Scheuer,* 416 U.S. at 247–48, 94 S.Ct. at 1692, and therefore it entails discovery such as the depositions sought here, *see Halperin v. Kissinger,* 606 F.2d 1192, 1209–10 & n. 120 (D.C.Cir.1979), *aff'd by evenly divided court,* 452 U.S. 713, 101 S.Ct. 3132, 69 L.Ed.2d 367 (1981). Notably, the opinion in *James* contains several references to a deposition of Governor Wallace, the decisionmaker-defendant. *See James,* 533 F.2d at 965, 968.

The Court additionally observes that defendant's argument appears to create a "catch–22" with a recent Supreme Court decision. In *St. Louis v. Praprotnik,* 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988), the Court decided that § 1983 liability could attach only to the decisions of officials with final policymaking authority for a municipality. If defendant's view prevails here, however, those same officials will be virtually impervious to discovery about their decisions.

Having rejected defendant's argument that the Mayor is absolutely immune from inquiry over his appointments, the Court finally notes that deposition of an executive official is proper when the official possesses particular information essential to plaintiff's case which cannot reasonably be obtained by another discovery mechanism. *E.g., Sweeney v. Bond,* 669 F.2d 542, 546 (8th Cir.), *cert. denied,* 459 U.S. 878, 103 S.Ct. 174, 74 L.Ed.2d 143 (1982); *Sykes v. Brown,* 90 F.R.D. 77, 78 (E.D.Pa.1981); *Alliance to End Repression v. Rochford,* 75 F.R.D. 428, 429 (N.D.Ill.1976). The narrowness of this ruling should not be overlooked. The Mayor is not subject to harassing deposition notices for any suit involving the City of Jacksonville; rather, the Mayor faces discovery in this form only when he is alleged to be an active participant in discriminatory conduct, including retaliation against city employees who seek legal redress for perceived discrimination. In this light, the Magistrate's ruling cannot be said to be contrary to law. *Cf. Alliance to End Repression,* 75 F.R.D. at 429 (authorizing deposition of Mayor Daley). Accordingly, it is

ORDERED AND ADJUDGED:

1. That defendant's Objection to Magistrate's Order Denying Defendant's Motion for Protective Order on Behalf of Defendant is hereby overruled;

2. That the Magistrate's order entered January 4, 1989, is hereby affirmed; and

3. That defendant's Motion to Modify or Set Aside Magistrate's Order Denying Defendant's Motion for Protective Order on Behalf of Defendant and to Enter Protective Order on Behalf of Defendant is hereby denied.

DONE AND ORDERED.