**Sherryl SCHULTZ, et al., Plaintiffs,**

v.

**Melvin Gary TALLEY, et al., Defendants.**

**No. 90–0084–CV–W–8.**

United States District Court, W.D. Missouri, W.D.

Nov. 16, 1993.

---

Gene P. Graham, Jr., Independence, MO, for plaintiffs.

Barry McCormick, Overland Park, KS, for defendants.

### ORDER

STEVENS, Chief Judge.

Before the Court are plaintiff's motions to quash protective order and cite Shelly Gasper in contempt. In addition to these issues the court must address the briefing schedule for defendants' motion to reconsider or amend.

## I. FACTS

The present case is not the only action brought against Brown Mackie College arising out of its court reporting program. Other aggrieved students and, for a time, some of these plaintiffs also sought relief through the Kansas Attorney General's office, which conducted an investigation of Brown Mackie. The dispute at the heart of the instant motions arose when plaintiffs in this case sought to depose Kansas Attorney General Robert Stephan and Assistant Attorney General Shelley Gasper. Plaintiffs also requested, in addition to the depositions, production of:

any and all correspondence, reports, memorandums [sic], responses, replies, documents, agreements, pleadings or other writings between Melvin Gary Talley or Brown Mackie College and your office pertaining to the investigation of the court reporting department of Brown Mackie College, Overland Park, Kansas.

Plaintiffs' subpoena issued August 30, 1990. Stephan and Gasper contested their notices of deposition and plaintiffs' request for documents. They moved for a protective order, arguing that the materials sought were protected by the work product doctrine. Stephan also argued that his position as the head of a government agency should excuse him from appearing for a deposition.

This court found that the work product doctrine did not apply because the documents were neither prepared for the instant litigation nor was the attorney general's office a party to the present suit. *Schultz v. Talley*, No. 90–0084, slip op. at 9 (W.D.Mo., March 25, 1991). The court ordered Gasper to appear for deposition with her investigation file. But the court did grant a protective order for Stephan, because he submitted an affidavit stating that he had no knowledge of the case. On April 17, 1991 Assistant Attorney General Shelly Gasper filed her motion to reconsider request for protective order. The court subsequently reconfirmed its order after hearing oral argument. Gasper then sought a writ of mandamus from the Eighth Circuit.

The Eighth Circuit denied the writ with certain conditions, based upon a colloquy that took place between that court and plaintiffs' counsel during oral argument. Counsel stated that he sought only three types of documents: the complaints filed with the attorney general by his clients, the "blue book" furnished to the attorney general by Brown Mackie, and other materials that were generated by Brown Mackie and by third parties that were furnished to the attorney general during the investigation. *In re Gasper*, No. 91–1864, slip op. at 3 (8th Cir., June 21, 1991). On the basis of this statement the Eighth Circuit panel upheld this court's order because it found that, "the materials that he does seek are those items in which we can discern little valid claim to applicability of the work product doctrine." *Id.*

Gasper subsequently appeared for deposition and produced her investigatory file, in accordance with the Eighth Circuit's decision. But she did not produce the complete file. Her attorney had removed certain papers, on the grounds that they were exempt from discovery under the work product doctrine. Plaintiffs then moved this court to hold Gasper in contempt and sought discovery of these documents.

Two other motions waited upon discovery of these materials. First, plaintiffs moved to quash Stephan's protective order based on information gained in a number of depositions. Second, defendants moved to reconsider or amend the order denying their motion to dismiss. After another round of briefing, this court issued its order of June 29, 1993. The court declined to find Gasper in contempt at that time, but instructed the parties that it would conduct in camera inspection of the redacted documents before resolving these issues.

## II. MOTION TO HOLD GASPER IN CONTEMPT; DISCOVERY OF DOCUMENTS

Assistant Attorney General Gasper claims that under Fed.R.Civ.P. 26(b)(3) plaintiff cannot discover certain documents contained in her investigation file. Gasper has provided these documents in camera so this court could inspect them. Rule 26(b)(3) reads in pertinent part:

a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

Gasper argues that the work product doctrine applies here because all the documents at issue here were either produced or obtained in anticipation of litigation.

### A.

The court originally ruled that the attorney general's office could not raise the work product doctrine because it was not a party to the instant litigation. "[D]ocuments prepared for one who is not a party to the present suit are wholly unprotected even though the person may be a party to a closely related lawsuit in which he will be disadvantaged if he must disclose in the present suit." 8 C. Wright & Miller, *Federal Practice and Procedure* § 2024 at 202 (1970). The Eighth Circuit panel acknowledged this reasoning,[1] but found that it did not have to decide whether the work product doctrine applied to the assistant attorney general because it clearly did not protect the documents sought.[2] The Eighth Circuit's laudable practice of framing its decisions on the narrowest possible basis left open the possibility that this court might have to revisit the issue if plaintiffs sought other documents.

The Eighth Circuit recognized this, and instructed this court to, "hold additional proceedings as it concludes are required by Fed. R.Civ.P. 26(b)(3) to determine relevance, substantial need and undue hardship."

■ Plaintiffs now seek, and Gasper opposes, disclosure of other documents in the investigatory file which were not covered by the Eighth Circuit's opinion.[3] This court must again determine whether the assistant attorney general can properly raise the protection of Rule 26(b)(3). Again, this court concludes that she cannot. A number of courts, in addition to this one, have recognized that, "the rule on its face, limits its protection to one who is a party (or a party's representative) to the litigation in which discovery is sought." *In re California Public Utilities Com'n*, 892 F.2d 778, 781 (9th Cir. 1989); *Doubleday v. Ruh*, 149 F.R.D. 601 (E.D.Cal.1993); *Hawkins v. South Plains International Trucks, Inc.*, 139 F.R.D. 682, 684 (D.Colo., 1991); *Gomez v. City of Nashua*, 126 F.R.D. 432, 434 (D.N.H.1989); *Chaney v. Slack*, 99 F.R.D. 531, 533 (S.D.Ga., 1983). Because Gasper is not a party or party's representative in this litigation she cannot claim protection under the rule.

The court in *Doubleday v. Ruh* (supra) reached a similar result, despite the fact that, as here, the non-parties were government prosecutors. There, plaintiff brought an action under 42 U.S.C. § 1983 against officers of the Sacramento County Sheriff's Department. She alleged, among other things, that the officers conspired to cause the district attorney's office to conduct an unwarranted criminal prosecution against her. Plaintiff sought the complete prosecutorial file from the district attorneys who handled the case.

---

**1.** "The district court denied the attorney general's motion for a protective order, however, concluding that the work product privilege does not apply to documents prepared for one who is not a party to the present suit." *In re Gasper* at 2.

**2.** Eighth Circuit noted that plaintiffs sought, "items in which we can discern little valid claim to the applicability of the work product doctrine." *Id.* at 3 (citing *In re Murphy*, 560 F.2d 326 (8th Cir.1977)).

**3.** Gasper argues that this court should not accede to plaintiffs request for two reasons. First,

their counsel did not ask for these documents when he was questioned by the Eighth Circuit. Second, they are not covered by plaintiff's first subpoena, but by a second subpoena issued after the Eighth Circuit's decision.

These arguments are unavailing. Plaintiffs are entitled to the full sweep of their discovery requests. Furthermore, this court finds that the broad language of the original subpoena (quoted supra) includes all of the documents described by the more specific language of the second subpoena.

The district attorneys asserted the work product doctrine, but the Magistrate Judge overruled their objection holding that:

> The deputy district attorneys cannot assert the immunity because they are not parties to the present litigation, nor are they "representative of" a party in this litigation for whom the work product was prepared.

*Id.* 149 F.R.D. at 606 (citing *In re California,* 892 F.2d at 781). The court, however, was aware of certain concerns raised by its ruling, taking note of, "the potential economic vice of a less diligent attorney raiding the file of a previously diligent attorney." *Id.* at 607.

■ But this danger was not present in the *Doubleday* case where the prior case was criminal and the subsequent civil. Accordingly, the court limited its decision to that situation, and observed that a protective order could be used to solve the problem in the civil context. *Id.* at 607 n. 6. That court's underlying reasoning applies with equal force to this case:

> plaintiff's attorney is seeking information directly pertinent to the issues in this civil case, is not seeking the information because he is too 'lazy' to develop the information himself, and is seeking information solely within the possession of the prosecuting agency.

*Id.* This court finds that plaintiffs have a legitimate need for the attorney general's investigatory file. They have conducted extensive discovery, and their request is not an effort to rely on the labors of the attorney general's office. Accordingly, the court finds that plaintiffs are entitled to discover the contents of Gasper's investigative file.

### B.

Even if the work product doctrine did apply in this case, it would not protect the documents passed between Brown Mackie and the attorney general's office. The Eighth Circuit ruled that the documents which Brown Mackie and third parties had supplied to the attorney general's Office had "little valid claim to the applicability of the work product doctrine". *In re Gasper* at 3. The panel implicitly recognized that these documents were discoverable.

■ The purpose of the work-product doctrine is to promote the adversary system. It does this by ensuring that an adversary cannot obtain materials that his opponent has prepared in anticipation of litigation. *Westinghouse Elec. Corp. v. Republic of the Philippines,* 951 F.2d 1414, 1428 (3rd Cir.1991). The Protection of this rule extends beyond the life of the litigation for which the material was prepared. *Fed. T.C. v. Grolier, Inc.,* 462 U.S. 19, 25, 103 S.Ct. 2209, 2213, 76 L.Ed.2d 387 (1983). The work product doctrine protects, "documents prepared in anticipation of or for previous litigation, regardless of whether the previous litigation was related or unrelated to the case in which discovery is sought." *Bituminous Cas. Corp. v. Tonka Corp.,* 140 F.R.D. 381 (D.Minn.1992) (citing *In re Murphy,* 560 F.2d 326, 334–335 (8th Cir.1977)). But the protection of the rule lasts only as long as the materials remain confidential.

■ Disclosure waives protection when it is inconsistent with the purpose of the rule. Specifically, "[d]isclosure to an adversary waives the work product protection as to items actually disclosed, even where disclosure occurs in settlement." *In re Chrysler Motors Corp. Overnight Evaluation,* 860 F.2d 844, 846 (8th Cir.1988). This includes information disclosed to an adversary under a confidentiality agreement. *Id.* Government agencies conducting prosecutions or investigation and their targets are adversaries within the meaning of the work-product doctrine. *Westinghouse,* 951 F.2d at 1428. (Westinghouse, Department of Justice (DOJ) and Securities and Exchange Commission (SEC) were adversaries where Westinghouse was target of investigation by DOJ and SEC); *In re Subpoenas Duces Tecum,* 738 F.2d 1367, 1372 (D.C.Cir.1984) ("no question that SEC was an adversary" with company under investigation). *Westinghouse* exemplifies this rule. There, the SEC and DOJ had investigated improper practices on the part of Westinghouse. The company provided information to the agencies during their investigations in the hope of obtaining lenient treatment. Later the Republic of Philippines brought suit against the company for the same improper conduct which the agencies

had probed. The Republic sought to discover from Westinghouse all the information that it had provided to SEC and DOJ. Westinghouse objected and claimed that the information was protected under the work-product doctrine. The Third Circuit found that the goal of the work product doctrine was, "to protect an attorney's work product from falling into the hands of an adversary." *Id.* at 1428. The panel reasoned that "a party who discloses documents protected by work product doctrine may continue to assert the doctrine's protection only when the disclosure furthers the doctrine's underlying goal [promoting the adversary system]." *Id.* at 1429. The court went on to hold that Westinghouse's disclosure of work product to its adversaries, SEC and DOJ, was inconsistent with the goal of the doctrine and "waived the work-product doctrine as against all other adversaries." *Id.*

In this case, the attorney general's office and Brown Mackie were adversaries with respect to the attorney general's investigation of the college. Because the information passed between them is known to both sides, the protection of the work-product doctrine serves no purpose either for Brown Mackie or the attorney general's office. Accordingly, documents passed between these two adversaries relating to their dispute are not protected by the work product doctrine.[4]

### C.

Gasper makes two additional arguments opposing discovery of documents in the file. She claims the documents are "protected by the public policy of the state of Kansas and the Kansas Open Records Act specifically K.S.A. § 45–221(1), (2), (14), and (25)." Deponent's objections filed July 19, 1993. In addition to relying directly on the Kansas Open Records Act (KORA), Gasper cites it as the basis for her public policy argument. This court believes that these arguments are best characterized as a request for the court to recognize a privilege over communications between the attorney general's office and

individuals or corporations that are targets of investigations or prosecutions. Such a privilege would qualify as substantive law of Kansas which the court must apply in this case.[5]

■■■ The court finds, however, that no such privilege exists under Kansas law. Kansas has abolished common law privileges, and Kansas courts recognize only privileges established by statute. *State v. Clovis,* 248 Kan. 313, 807 P.2d 127, 134 (1991); *State v. Knox,* 4 Kan.App.2d 87, 603 P.2d 199, 204 (1979). Thus, Gasper's "public policy" argument is unavailing because it amounts to a request to recognize a common law privilege. The court further finds that the Kansas Open Records Act (KORA), codified at Kan.Stat. Ann. § 45–221 (1992), does not confer a privilege.

■ KORA throws open to public scrutiny all state records. Kan.Stat.Ann. § 45–216(a) (1986). It exempts only those documents specifically mentioned. Kan.Stat.Ann. § 45–221(a). But this exemption merely grants public agencies the discretion not to disclose, "to the extent disclosure is otherwise required by law." *Id.* Such discretion is not equivalent to a judicial privilege.

The Kansas Legislature has used clear and specific language when it desired to create a judicial privilege. The Kansas Rules of Evidence provide a privilege for undisclosed state information by stating that, "A witness has a privilege to refuse to disclose a matter ... and evidence of the matter is inadmissible." *See* Kan.Stat.Ann. §§ 60–433(b), 60–434(b). But this privilege extends only to information which qualifies as "state secrets" and "official information" because it relate to public security, and the present documents do not fall within this category. *See* Kan. Stat.Ann. §§ 60–433, 60–434 (1983). KORA lacks any such clear directive.

Outside the rules of evidence, the legislature has also made clear when it wished to create a privilege. Section 65–4915 of the Kansas Statutes, which was enacted the same year as KORA, provides a useful com-

---

4. To the extent that they are in conflict, the court's March 25, 1991 order shall not prohibit any discovery allowed by this order.

5. The court indicated that it will apply the substantive law of Kansas to this case. *See Schultz v. Talley,* No. 90–0084, 1991 WL 538754 (W.D.Mo. Oct. 15, 1991).

parison. This statute governs peer review of health care professionals. It establishes a privilege for the records of these proceedings with the following language:

> [such records] shall be privileged and shall not be subject to discovery, subpoena or other means of legal compulsion for their release to any person or entity or be admissible in evidence in any judicial or administrative proceeding. Information contained in such records shall not be discoverable or admissible at trial in the form of testimony by an individual who participated in the peer review process.

Kan.Stat.Ann. § 65–4915(b) (1992). Had the legislature desired to confer a similar privilege for the records exempted from KORA, it could easily have done so by using the same language. The court finds that statutory release from required disclosure does not rise to the level of a privilege against judicial compulsion.

Accordingly, the court orders the Shelly Gasper to provide to plaintiffs all documents presented in camera. Because both this issue and its history in this case are novel the court will not hold Gasper in contempt at this time.

### III. MOTION TO QUASH PROTECTIVE ORDER

▆ Plaintiffs have also asked this court to quash Kansas Attorney General Robert Stephan's protective order. The court granted this order based upon an affidavit provided by Attorney General Stephan. The affidavit certified that Stephan had no files relating to the investigation of Brown Mackie College and that he did not participate actively in the investigation. Plaintiffs' now complain that Stephan attended meetings during the investigation with Assistant Attorney General Gasper and representatives of Brown Mackie.[6]

The law excuses executives from deposition when it is clear that they have no "particular information essential to plaintiff's case which cannot reasonable be obtained by another discovery mechanism." *Tye v. City of*

*Jacksonville, Fla.,* 707 F.Supp. 1298, 1300 (M.D.Fla.1989); *Sweeny v. Bond,* 669 F.2d 542, 546 (8th Cir.), *cert. denied,* 459 U.S. 878, 103 S.Ct. 174, 74 L.Ed.2d 143 (1982) (proper to deny deposition of Governor of Missouri where plaintiff failed to show that governor possessed information essential to plaintiff's case which could not be obtained from other administrators). The court accepts that Stephan did participate as a supervisor on the case and in that capacity presided over a number of meetings between Brown Mackie and the attorney general's office. This is not enough, however, to cause this court to quash the protective order. Plaintiff's have still failed to show that Stephan has particular information which only he can relate. Assistant Attorney General Shelly Gasper attended all the meetings with Stephan and she has been available for deposition. Plaintiffs thus have an adequate alternative source for discovery and the court's protective order will remain in effect.

### IV. BRIEFING SCHEDULE

It remains for the court to establish a briefing schedule for the one issue that still remains. The court entered an order denying defendants' motion for summary judgment on October 15, 1991. Defendants have moved to reconsider or amend that decision based on the running of Kansas' two-year statute of limitations. This motion involves two factually oriented issues: first, when did plaintiffs discover the alleged fraud, thus triggering the running of the statute of limitations; and second, did the attorney general's investigation toll the running of the statute? In its June 29, 1993 order the court recognized that briefing on these issues must await a ruling on the discoverability of the attorney general's files. The court has now ruled and sets the following accelerated briefing schedule to conform with the December 6, 1993 trial date.

a. All pretrial discovery authorized by the Federal Rules of Civil Procedure will be completed on or before November 26, 1993.

---

**6.** Plaintiffs do not argue that Stephan has any files relating to the case. This court, after in camera inspection of the Shelly Gasper's files, is convinced that she has all the documents relating to the investigation.

b.  Defendants shall file their suggestions on or before November 29, 1993.

c.  Plaintiffs shall file their response on or before December 3, 1993.

SO ORDERED.