STATE of Missouri ex rel. BOONE
RETIREMENT CENTER,
INC., Relator,

v.

Honorable Gene HAMILTON, Judge,
Circuit Court, Boone County,
Respondent.

No. 79728.

Supreme Court of Missouri,
En Banc.

June 17, 1997.

Mark G. Arnold, St. Louis, Harvey M. Tettlebaum, Lowell Pearson, Jefferson City, for Relator.

Jeremiah W. (Jay) Nixon, Attorney General, James Layton, Chief Deputy Attorney General, Sam W. McCahon, Special Prosecuting Attorney, Jefferson City, for Respondent.

ROBERTSON, Judge.

Congress requires every nursing home receiving Medicare or Medicaid to establish a quality assessment and assurance committee. Within the statute establishing this requirement, Congress said "[a] State ... may not require disclosure of the records of such committee except insofar as such disclosure is related to the compliance of such committee with the requirements of this subparagraph." 42 U.S.C. section 1395i–3(b)(1)(B) (skilled nursing facility) and 42 U.S.C. section 1396r(b)(1)(B) (nursing facility). The issue in this case is whether these statutes prohibit a state grand jury from requiring a skilled nursing facility and/or a nursing facility to disclose records of a quality assurance committee.

We conclude that the privilege created by the Congress in the referenced statutes bars a state grand jury from compelling disclosure of records of a quality assurance committee. The preliminary writ in prohibition previously issued by this Court pursuant to its constitutional jurisdiction, Mo. Const. art. V, sec. 4, is made absolute.

## I.

Boone Retirement Center, Inc. (Boone) is a skilled nursing facility in Boone County, Missouri. Boone is certified to provide services and receive compensation under the provisions of the Medicare and Medicaid statutes and implementing regulations. The Missouri division of aging is the state agency responsible for conducting administrative surveys to determine compliance with federal regulations. Respondent is the circuit judge, the Honorable Gene Hamilton. He is represented by the Attorney General.

According to respondent's papers, from September 16 through 19, 1995, the division of aging initiated an inspection of the Boone facility. The inspection revealed a large number of deficiencies relating to the quality of care residents were receiving and, according to the Attorney General's allegations, discovered a "pattern of neglect" involving a number of residents who had received pressure sores in the facility. The Attorney General claims that three of the residents died from sepsis infections resulting from the pressure sores. Other patients required amputations and surgical debridement of the infected areas.

The Attorney General of Missouri initiated a criminal investigation to determine whether the residents of Boone were the victims of criminal neglect under section 198.070, RSMo 1994. Under that statute, abuse and neglect of residents of nursing homes is punishable as a class D felony. In furtherance of that investigation, the Attorney General issued a criminal subpoena seeking production of certain records of "Boone's Quality Assurance Committee." Boone refused to provide the documents subpoenaed by the Attorney General, claiming that they are privileged pursuant to 42 U.S.C. section 1395i–3 and 42 U.S.C. section 1396r.

In January 1996, the Attorney General submitted an investigative summary to the prosecuting attorney for Boone County. The Boone County prosecutor recused himself. The presiding judge of the Circuit Court of Boone County appointed a special prosecuting attorney to act in the prosecutor's stead.

The special prosecutor presented the information to the Boone County grand jury, which issued a subpoena duces tecum to Boone to produce "any and all quality assurance records, reports and/or attachments, reflecting materials generated by or presented to the Boone Retirement Center Quality Assurance Committee from January 1, 1994 through January 1, 1996." Boone filed a motion to quash on February 10, 1997. Respondent, Judge Hamilton, heard arguments on the motion and overruled the motion to quash.

On March 10, 1997, Boone filed a petition for writ of prohibition with this Court. This Court issued its preliminary writ of prohibition.

## II.

### A.

■ We first consider whether prohibition is the appropriate remedy under these circumstances. When a party claims material that it has been directed to produce is privileged, a writ of prohibition is appropriate to determine whether the privilege claimed in fact covers the materials demanded. This is because "the damage to the party against whom discovery is sought is both severe and irreparable" if the privileged material is produced and this "damage cannot be repaired on appeal." *State ex rel. Wilfong v. Schaeperkoetter*, 933 S.W.2d 407, 408 (Mo. banc 1996).

■ The state implicitly concedes that prohibition is appropriate in this case, arguing only that the purpose of prohibition is to prevent a court from acting outside its jurisdiction. *Wilfong, State ex rel. Noranda Aluminum v. Rains*, 706 S.W.2d 861, 862 (Mo. banc 1986), and *State ex rel. Peabody Coal Company v. Clark*, 863 S.W.2d 604, 608 (Mo. banc 1993), clearly show that prohibition is

appropriate under circumstances in which matters of privilege are at issue and an appeal is an inadequate remedy.

### B.

42 U.S.C. section 1395i–3(b)(1)(B) provides:

A skilled nursing facility must maintain a quality assessment and assurance committee, consisting of the director of nursing services, a physician designated by the facility, and at least 3 other members of the facility's staff, which (i) meets at least quarterly to identify issues with respect to which quality assessment and assurance activities are necessary and (ii) develops and implements appropriate plans of action to correct identified quality deficiencies. *A State or the Secretary may not require disclosure of the records of such committee except insofar as such disclosure is related to the compliance of such committee with the requirements of this subparagraph.*

(Emphasis added.) 42 U.S.C. section 1396r(b)(1)(B) applies the same language to nursing facilities.

This is a case of first impression. No federal court has interpreted these statutes.

Boone argues that the statutes are clear on their face. They prohibit any entity of the state from requiring disclosure of records of a quality assessment and assurance committee. The grand jury is an entity of the state. Therefore, the grand jury may not require Boone to disclose records of its quality assurance committee.

Respondent disagrees, claiming that federal courts require that plain, statutory language be considered in context to determine its meaning. *Bailey v. United States,* —— U.S. ——, ——, 116 S.Ct. 501, 506, 133 L.Ed.2d 472 (1995). Respondent argues: that Boone lifts the single, statutory sentence from its context; that the word "State" used in the statute is limited to the state's division of aging that has oversight responsibilities over Boone; that state grand juries do not fall within the meaning of "State" as used in the federal statute; and, therefore, that a state grand jury may require disclosure of the committee's records despite the statutory prohibition. Respondent argues that his pro-

posed interpretation of the statute is consistent with the policy purposes of Congress, with the legislative history of the statutes, with the interpretations of the relevant statutes by the federal department of health and human services, and with a general policy of protecting nursing home residents from harm.

As the parties make clear, this case pivots on the meaning of the word "State" used in the statutes sub judice. The policy justifications respondent offers for his preferred definition of "State" are the better ones. But the legal arguments respondent offers to support his limiting definition assume that the meaning of the word "State" is made malleable by context. It is not. Congress defined the word "State" in the statute itself. That definition controls.

42 U.S.C. section 1395x(x) defines "State." "The terms 'State' and 'United States' have the meaning given to them by subsections (h) and (i), respectively, of section 410 of this title." 42 U.S.C. section 410(h) says: "The term 'State' includes the District of Columbia, the Commonwealth of Puerto Rico, the Virgin Islands, Guam, and American Samoa."

The statutory definitions adopted by Congress of the word "State" do not limit that word's meaning to a designated state agency for purposes of sections 1395i and 1396r. The Congressional definition is territorially focused, not functionally limiting; it intends to include within "State" the whole of the functional, legal entity organized to act as a government within a territory of land recognized by the federal government for that purpose. Arguments suggesting that this Court define "State" to accommodate a preferred policy insinuated by context; in a manner consistent with the regulations of the secretary of health and human services; or in a manner that more closely reflects what Congress should have said, are unavailing where the Congress supplies a contrary, specific definition. If Congress had intended what respondent argues, it could not have defined the critical term as it did.

We hold, therefore, that the privileges erected in sections 1395i and 1396r prohibit a state grand jury from commanding disclosure of records of quality assurance commit-

tees formed pursuant to those statutes. As to the actual records of the Boone quality assurance committee, the writ of prohibition previously issued is made absolute.

In refusing to obey the subpoena for records of its quality assurance committee, Boone also refused to produce "materials ... presented to the Boone Retirement Center Quality Assurance Committee" as required by the subpoena. The statute limits the scope of the privilege to "records of such committee." This statutory privilege is exceedingly narrow. It protects the committee's own records—its minutes or internal working papers or statements of conclusions—from discovery. No honest reading of the statute, however, can extend the statute's privilege to records and materials generated or created outside the committee and submitted to the committee for its review.

Lest there be any doubt about our holding, the writ of prohibition made absolute here does *not* extend to records and materials generated or created by persons or entities operating outside the quality assurance committee. The grand jury may subpoena such records and material and may require Boone to produce them.

### III.

The writ of prohibition previously issued is made absolute.

HOLSTEIN, C.J., BENTON, PRICE, LIMBAUGH and WHITE, JJ., and GRIMM, Special Judge, concur.

COVINGTON, J., not sitting.