**STATE of Missouri ex rel. MISSOURI ETHICS COMMISSION, Relator,**

v.

**The Honorable Grace M. NICHOLS, Judge of the Circuit Court of St. Charles County, Respondent.**

No. 74130.

Missouri Court of Appeals, Eastern District, Writ Division Three.

July 21, 1998.

Motion for Transfer to Supreme Court Denied Sept. 30, 1998.

Application to Transfer Denied Nov. 12, 1998.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jane A Rackers, Asst. Atty. Gen., Paul R. Maguffee, Asst. Attys. Gen., Jefferson City, for relator.

James P. Lemonds, Holtkamp, Liese, Beckmeier & Childress, P.C., Robert S. Sanderson, St. Louis, for respondent.

CRANE, Presiding Judge.

Relator Missouri Ethics Commission (M.E.C.) seeks a writ of prohibition prohibiting respondent, the Honorable Grace M. Nichols, from enforcing an order denying a motion to quash a subpoena to produce documents pertaining to a complaint filed with the M.E.C. by the defendant in the underlying action. We issued a preliminary writ of prohibition and now quash our preliminary writ as improvidently granted.

In the underlying action, Ron Entwistle filed an action against Doyle Stokes and Bob Fisher alleging abuse of process, libel and slander, and civil conspiracy. Entwistle alleged that Stokes maliciously instituted a complaint against him with the M.E.C. and that Stokes knowingly made false statements to city officials about the complaint against Entwistle, including statements that the M.E.C. told Stokes that it was going to find against Entwistle, that Entwistle was in serious trouble with the M.E.C., and that the M.E.C. was going to come down hard on Entwistle.

Stokes and Fisher served a subpoena on the M.E.C. ordering its records custodian to appear and produce:

All documents, not privileged, pertaining to any Complaints filed with the Missouri Ethics Commission by Doyle Stokes or Ron Entwistle against the other, for the period from December, 1994, to the present, including, but not limited to, all investigative materials, interviews, statements, and reports relating to such Complaints.

The M.E.C. moved to quash the subpoena on the basis that any records in its possession which would be responsive to the subpoena are confidential under the provisions of Sections 105.955 to 105.963 RSMo (1994) and may not be released to anyone.

Thereafter, respondent entered her order denying the M.E.C.'s motion to quash the subpoena. Respondent found that Entwistle had put the subject matter of the M.E.C.'s "proceedings involving defendant Stokes in issue by initiating litigation so that any privilege that may have existed with regard to the disclosure of records by the [M.E.C.] has been waived." She ordered the records to be produced *in camera* so she could determine which records, if any, are relevant to the issues raised in the pleadings and only make the relevant records available to defendants' attorneys for inspection and use subject to protective orders as required.

The M.E.C. contends that it is entitled to a writ of prohibition because respondent exceeded her jurisdiction by denying its motion to quash the subpoena and ordering it to produce confidential documents pertaining to ethical complaints for *in camera* review.

■ When a party has been directed to produce material which the party claims is privileged, a writ of prohibition is appropriate to determine whether a privilege in fact covers the materials demanded. *State ex rel. Boone Retirement Center, Inc. v. Hamilton*, 946 S.W.2d 740, 741 (Mo. banc 1997). If privileged material is produced, the damage to the party against whom discovery is sought is both severe and irreparable and cannot be repaired on appeal. *Id.*

Sections 105.955–105.963 RSMo (1994) (the "statute") establishes the Missouri Ethics Commission and sets forth its duties, responsibilities and powers with respect to the investigation and enforcement of conflict of interest and campaign disclosure statutes. Two separate provisions expressly make the M.E.C. proceedings confidential and set out penalties for breaches of confidentiality. Section 105.959 provides that all investigations by the administrative secretary shall be "strictly confidential" with the exception of the notification of the M.E.C., the complainant, or the person under investigation. "Revealing any such confidential investigation information shall be cause for removal or dismissal of the administrative secretary or a commission member or employee." *Id.*

Section 105.961.15 imposes the duty of confidentiality on the special investigator and M.E.C. members and staff:

The special investigator and members and staff of the commission shall maintain confidentiality with respect to all matters concerning a complaint until and if a report is filed with the commission, with the exception of communications with any person which are necessary to the investigation. The report filed with the Commission resulting from a complaint acted upon under the provisions of this section shall not contain the name of the complainant or other person providing information to the investigator, if so requested in writing by the complainant or such other person. Any person who violates the confidentiality requirements imposed by this section … shall be guilty of a class A misdemeanor and shall be subject to removal from or termination of employment by the commission.

*Id.* In addition, if the M.E.C. conducts a hearing, it is not open to the public. Section 105.961.3.

The statute also sets out the situations in which the complainant and target are notified of commission action. *See* Section 105.959.3. The M.E.C. can also refer its report and recommendations to the appropriate prosecuting authority pursuant to the provisions of Section 105.959.6 or refer its findings and conclusions to the appropriate disciplinary authority pursuant to the provisions of Section 105.961.3. Under some circumstances the M.E.C. may file the report with the administrative secretary to be maintained as a public document. Section 105.961.4(3).

The statute does not contain any provisions which expressly create a privilege with respect to M.E.C. documents or protect them from discovery or use in evidence.

The M.E.C. argues that the statute does not create a privilege, but a confidential process not subject to discovery. Alternatively, it argues that, if the statute has created a privilege, it was not waived when the target of the investigation filed his lawsuit. Respondent argues that the statute creates a statutory privilege with respect to the documents held by the M.E.C. which can be and was waived by the target of the complaint and investigation.

We disagree with both parties. Although the statute makes the matters before the M.E.C. confidential, it does not create a privilege which exempts those matters from discovery. Therefore, the question whether the privilege was waived does not arise. The confidentiality of the M.E.C. investigation and proceedings may be preserved under appropriate protective orders which take into account the nature and scope of the confidentiality provisions of the statute.

We first address whether the statute creates a privilege of confidentiality with respect to matters before the M.E.C. "The concept of privilege is an exception to the usual rule of courts that all evidence material, relevant and competent to a judicial proceeding shall be revealed if called for." *Ex parte McClelland,* 521 S.W.2d 481, 483 (Mo.App.1975). "Justice operates upon disclosure, not secrecy. Society in general, and courts and legislatures in particular, have recognized that certain exceptions to that general rule must be made, either for the protection of basic human individual needs or for the protection of the society itself." *Id.* Privileges which protect basic individual needs, such as lawyer-client, physician-patient, cleric-penitent, and self-incrimination are absolute. *Id.* Privileges which must sometimes yield to competing rights are deemed qualified. *Id.*

Because claims of privilege present an exception to the usual rules of evidence they are carefully scrutinized. *State ex rel. Chandra v. Sprinkle,* 678 S.W.2d 804, 807 (Mo.

banc 1984). When a party claims a privilege is created by statute, we look at the clear language of the statute to determine if it established the requested privilege. *Id.* We can also look at whether a public policy in favor of confidentiality creates a privilege against a party's right to discovery. *Id.*

■ We address the statute first. A statute creates a discovery or evidentiary privilege where it specifically uses the word "privilege" in that context, prohibits the state from obtaining disclosure of the confidential information, *see, e.g., Boone,* 946 S.W.2d at 742–43, or prohibits the use of confidential information in evidence. *See, e.g., State ex rel. Rowland v. O'Toole,* 884 S.W.2d 100, 102 (Mo.App.1994). This statute does none of these. Rather, it prohibits disclosure of matters before the M.E.C.

■ Generally, where a statute prohibits disclosure of the records of an administrative body or other entity or makes its processes confidential, courts have held that no discovery or evidentiary privilege is created with respect to those records in the absence of further specific statutory language creating a privilege. Such statutes mandate confidentiality but do not create a privilege. *See O'Neil v. Q.L.C.R.I., Inc.,* 750 F.Supp. 551, 557 (D.R.I.1990) (interpreting Rhode Island law); *Maine Sugar Indus., Inc. v. Maine Industrial Bldg. Authority,* 264 A.2d 1, 6 (Me.1970). *See also Steven Operating, Inc. v. Home State Sav.,* 105 F.R.D. 7, 8 (S.D.Ohio 1984) (interpreting Ohio law); *In re Culhane's Estate,* 269 Mich. 68, 256 N.W. 807, 811 (1934). With respect to state bank secrecy statutes, for example, "[t]he prohibition against disclosure means voluntary disclosure and does not refer to the duty to testify and produce evidence or to the production of discovery leading to the production of evidence." *Cherry Grove Sav. v. Ohio Deposit Guar.,* 33 Ohio Misc.2d 29, 515 N.E.2d 30, 36 (Ohio Com.Pl.1986) and cases cited therein.

Likewise, state statutes patterned on the Federal Freedom of Information Act [1] which protect certain types of documents from disclosure, but do not specifically protect them

---

1. 5 U.S.C. Section 552 (1994).

from discovery, do not create a privilege to withhold relevant documents from judicial discovery in a court action. *See People ex rel. Birkett v. City of Chicago*, 292 Ill.App.3d 745, 226 Ill.Dec. 717, 686 N.E.2d 66, 71 (2 Dist.1997); *Schultz v. Talley*, 152 F.R.D. 181, 186–87 (W.D.Mo.1993) (construing Kansas law). In *Schultz* the court held that the Kansas Open Records Act, specifically, K.S.A. Section 45–221(1), (2), (14), and (25) did not create a privilege over communications between the attorney general's office and individuals or corporations which are targets of investigations or prosecutions. *Id.*

The M.E.C. argues that the Missouri statute, which contains criminal penalties for its violation, creates a confidential process stronger than a privilege and its documents and proceedings are not therefore subject to discovery and may not be waived. We disagree. *Cherry Grove*, cited above, involved criminal penalties for disclosure. The statute is a simple confidentiality provision, not a true privilege. A situation in which protection beyond privilege is created is where no possible use can be made of records, such as when they are ordered to be expunged. *Ann L. v. X Corp.*, 133 F.R.D. 433, 437 (W.D.N.Y. 1990).

In addition, we find no reason based on public policy for a court to recognize an investigative process privilege with respect to the documents sought. The creation of a privilege of this nature is appropriately a legislative responsibility.

The statutorily mandated confidentiality of the M.E.C.'s investigations may be protected in this case by protective order. A protective order would assure that the statute's underlying purposes, including protecting the identity of third party witnesses, would be honored.

Missouri Rule 56.01(b)(1) allows discovery "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." The Supreme Court has held, with respect to identical state rules:

> The Rules do not differentiate between information that is private or intimate and that to which no privacy interests attach.

Under the Rules, the only express limitations are that the information sought is not privileged, and is relevant to the subject matter of the pending action. Thus, the Rules often allow extensive intrusion into the affairs of both litigants and third parties.

*Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 30, 104 S.Ct. 2199, 2206, 81 L.Ed.2d 17 (1984). Because discovery may seriously implicate the privacy interests of litigants and third parties, trial courts have implicit power to use protective orders to preserve confidentiality and protect against public disclosure. *Id.*, 467 U.S. at 34–35, 104 S.Ct. at 2208–09.

Respondent did not exceed her jurisdiction in ordering confidential records of the M.E.C. to be produced *in camera* to be reviewed for relevance and made available subject to protective orders as required to protect confidentiality.

Accordingly, our preliminary writ of prohibition is quashed as improvidently granted.

PUDLOWSKI and KAROHL, JJ., concur.